[S. F. No. 8312.  In Bank.—January 27, 1920.]

MILLER & LUX INCORPORATED (a Corporation), Appellant, v. FRIEND W. RICHARDSON, State Treasurer, etc., Respondent.

**[1]** TAXATION—ASSESSMENT AND TAXATION OF CORPORATE FRANCHISES —CONSTRUCTION OF CONSTITUTION.—When the constitution in article XIII, section 14, subdivision (d), provides for the assessment and taxation of corporate franchises, it means the so-called corporate excess, although such is not the usual, nor, strictly speaking, a proper, use of the word "franchise."

**[2]** ID.—ASSESSMENT OF CORPORATE FRANCHISES—EXCLUSION OF GOODWILL—ACT OF 1911 UNCONSTITUTIONAL.—The goodwill of a corporation is a part of its franchise for the purposes of assessment and taxation under article XIII, section 14, subdivision (d), of the constitution, and the provision of section 5 of the act of 1911 (Stats. 1911, p. 530), providing that certain corporate franchises shall be assessed at their actual cash value, after making deduction for goodwill, violates such constitutional provision.

**[3]** ID.—EXCESSIVE AND ARBITRARY ASSESSMENT—EXTENT OF JURISDICTION OF COURTS.—Courts cannot, except where there is fraud or mistake, go into the matter of an assessment being excessive

1. Taxation of franchises generally, notes, 131 **Am. St. Rep.** 867– 882, 57 **L. R. A.** 34; of franchises of foreign corporations, note, 131 **Am. St. Rep.** 883.

and arbitrary, provided the method pursued in making the assessment is that prescribed by law, and the thing assessed is the thing which is required to be assessed.

[4] ACTION TO RECOVER TAXES—ALLEGED EXCESSIVE AND ARBITRARY ASSESSMENT—INSUFFICIENT ALLEGATION OF FRAUD.—In an action to recover taxes paid under protest upon an alleged illegal and arbitrary assessment of a corporate franchise, the allegation that the assessment is excessive and arbitrary does not amount to an allegation of such conscious failure to exercise that fair and impartial judgment which the law requires of the assessing official, and is not the equivalent of an allegation that the assessment was imposed fraudulently.

[5] ID.—ACT OF 1911—REPORT FROM CORPORATIONS—FIXING VALUES —DISCRETION.—The provision of the act of 1911 (Stats. 1911, p. 530), requiring a report from corporations subject to tax setting forth the items from which the value of their corporate excesses may be deducted, does not bind the board to accept or follow the figures submitted, but leaves the matter of fixing values entirely to the best discretion of the board.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George A. Sturtevant, Judge. Affirmed.

The facts are stated in the opinion of the court.

Edward F. Treadwell and Delger Trowbridge for Appellant.

U. S. Webb, Attorney-General, Raymond Benjamin, Chief Deputy Attorney-General, and Frank L. Guerena, Deputy Attorney-General, for Respondent.

OLNEY, J.—This is an action to recover taxes paid under protest by the plaintiff corporation upon alleged illegal and arbitrary assessments of its "franchise" for the years 1911 to 1915, inclusive, by the state board of equalization. The plaintiff is a foreign corporation and possesses no special franchise or privilege within the state which the state board

---

4. Recovery of illegal tax paid "under protest," note, **Ann. Cas.** 1915A, 495.

Necessity and sufficiency of statement of grounds in notice of protest required as condition precedent to recovering back payment of an unlawful tax, note, 36 **L. R. A. (N. S.)** 476.

of equalization was attempting to assess. The only franchise in the strict sense of that word which would be covered by the assessments in question is the privilege of the plaintiff to do business as a corporation within the state. The assessments were made upon the basis of valuing thereby the so-called "corporate excess"; that is, the difference between the value of its outstanding stocks and bonds as determined by market quotations, the earnings of the company, or otherwise, and the value of its tangible or physical properties. The theory is that the value of the company's outstanding stocks and bonds represents the value of its total assets, so that the difference between this total and the value of the company's physical properties represents the value of the company's intangible assets, and an assessment of the corporate excess, that is, of this difference, is an assessment of all the company's so-called intangibles.

Although the plaintiff is a foreign corporation, no question is presented as to the allocation of its corporate excess within and without the state. In the opening brief for plaintiff the right of the board of equalization to make any general franchise assessment in the case of a foreign corporation is apparently questioned, but in its reply brief it is stated that all of the plaintiff's business is within the state, as shown by the record, and that for all practical purposes the plaintiff is in the position of a domestic corporation, and the method of assessing the general franchise of a domestic corporation should be applied in its case. Our further discussion is upon that basis.

The main point of attack upon the assessments is that the state board of equalization refused and failed to deduct from the value of the plaintiff's corporate excess the value of its goodwill. The plaintiff's reliance is upon section 5 of the act of 1911 (Stats. 1911, p. 530; General Laws 1915, Act 4065), the pertinent portion of which reads: "All franchises, other than those of the companies mentioned in sections 2, 3 and 4 of this act [of which plaintiff is not one] shall be assessed at their actual cash value, after making due deduction for goodwill . . . "

The board of equalization in declining to make such deduction acted upon the advice of the attorney-general that the provision of the statute for a deduction for goodwill was contrary to our state constitution and void. It requires but a very brief consideration to make it evident that this is

true if, in fact, the statute means that a deduction or subtraction for goodwill must be made from the value of the franchise. Section 1 of article XIII of the constitution provides, in effect, that all property with certain exceptions not material here shall be assessed at its actual cash value. Subdivision (d) of section 14 of the same article makes the same provision in regard to franchises in particular. There is no provision for any deduction from this value, either for goodwill or anything else. It is immediately evident that an assessment of a franchise made by deducting something from its value is an assessment for less than its value and in direct violation of both the constitutional provisions mentioned. This is so plain that it is hardly possible that it was what the legislature had in mind.

A much more probable construction of the statute is that the legislature intended that in valuing a corporate franchise goodwill should not be taken as an element of the franchise, and that the value of the corporation's goodwill should therefore not be included in the valuation placed on its franchise. This, of course, is a very different thing from making a deduction from the value of the franchise. But even with this construction, the statute is yet practically meaningless. If goodwill is not a proper element of franchise as that word is used in the constitution, then certainly its value must not be included in the valuation of the franchise, statute or no statute, and, on the other hand, if it is an element of franchise as meant by the constitution, a statute authorizing the omission of its value from the assessment of the franchise is again simply contrary to the constitution and void. In other words, the propriety of omitting or including anything for goodwill in assessing a corporate franchise is finally a question purely of constitutional construction, a question as to the meaning to be given to the word "franchises" in article XIII, section 14, subdivision (d), of the constitution, which reads: "All franchises, other than those expressly provided for in this section, shall be assessed at their actual cash value, in the manner to be provided by law, and shall be taxed at the rate of one per centum each year, and the taxes collected thereon shall be exclusively for the benefit of the state."

The question so presented is, in fact, broader than one as to the propriety of omitting or including the element of

goodwill. The assessments in question are on the basis of valuing thereby all of the plaintiff's corporate excess. The corporate excess of necessity includes all of the plaintiff's intangibles, of which the plaintiff's goodwill, if it has any, is but one. The plaintiff may well have other intangibles of which it can be truly said that if goodwill is not a part of its franchise for purposes of assessment, neither are they. The assessments in question can be justified only upon the theory that by franchise the constitutional provision under consideration means corporate excess. Whether this theory be correct or not is a matter of extreme practical importance, since for years now assessments have been made and taxes in large amounts collected by the state in reliance upon it.

If the construction of the constitution were to be decided solely by a consideration of the natural and usual signification of the word "franchise," there could be but little doubt. It has a fairly definite and certain meaning. Without attempting a wholly accurate or comprehensive definition it means in general in such connection as the present a privilege or right granted by public authority. In the present case the only thing of this character involved is the privilege to be a corporation or to do business as a corporation. The word "franchise" in its natural and usual meaning by no means includes such things as goodwill, advantageous contracts or connections, or other things or incidents having no physical existence and yet contributing to the corporation's earning power and giving value to its stock and bonds. But the matter cannot be so simply determined. There lies behind the provision for the taxation of franchises quite a history which must of necessity be taken into consideration.

The provision in question is part of an amendment to the constitution proposed by a special session of the legislature in 1910 and approved by the people in the fall of that year. The amendment was the result of the labors of a tax commission appointed some years before, and its primary purpose was to effect a separation of state and county taxes, and in that behalf to set off exclusively for taxation for state purposes certain particular subjects, consisting in a general way of the properties of public utility corporations other than their nonoperative properties, of the properties of insurance companies and banks other than their real estate, and of franchises. Previous to the adoption of this amend-

ment funds for both state and county purposes were, in general, raised by a single tax assessed and collected through the instrumentalities of the counties. The assessment by which such tax was levied was required by the constitution (art. XIII, sec. 1) to cover all forms of property not exempt from taxation, the constitution specifying that "the word 'property,' as used in this article and section, is hereby declared to include moneys, credits, bonds, stocks, dues, *franchises*, and all other matters and things, real, personal, and mixed, capable of private ownership."

The article containing this provision was a part of the constitution as adopted in 1879, and in 1881, in the case of *Burke* v. *Badlam,* 57 Cal. 594, this court held that under it there was properly assessed to a corporation every element of value represented by the market value of its stocks and bonds. This was followed almost immediately by the decision in *San Jose Gas Co.* v. *January,* 57 Cal. 614. There the county assessor of Santa Clara County made an assessment of the "franchise" of a gas company within the county by estimating the difference between the aggregate market value of its shares of stock and the value of its physical properties—in other words, its corporate excess. The company applied to the courts for relief against the assessment and the assessment was upheld. So far as pertinent here the opinion of the court went off on the point that the company had a franchise which was assessable without considering particularly the question as to whether under the name of franchise there had been assessed elements which were not properly elements of franchise at all. The final fact, however, was that an assessment of the company's corporate excess under the designation franchise was upheld.

This decision was followed by *Spring Valley Water Works* v. *Schottler,* 62 Cal. 69, where a similar assessment upon a corporation's franchise was involved and likewise upheld. Here, again, the opinion is largely concerned with the question of whether the corporation had any franchise whatever which could be assessed. The method of making the assessment is nevertheless touched upon, and the method pursued was sustained upon the authority of the January case, although apparently without any clear appreciation of the distinction between a franchise in the accurate sense and

other intangibles which may enter into and help make up the corporate excess.

The question was again presented in *Bank of California* v. *San Francisco,* 142 Cal. 276, [100 Am. St. Rep. 130, 64 L. R. A. 918, 75 Pac. 832], where the county assessor had placed an assessment upon the franchise of a bank by determining the difference between the aggregate value of the stock of the bank and the value of its tangible properties. Such assessment was again upheld and again the opinion is largely concerned with the question of whether or not the bank had any franchise at all which could be assessed. There is, however, a discussion of the contention that the method of valuation pursued involved the inclusion under the head of franchise of such elements as dividends or profits, earning power, and goodwill, which were not elements of franchise at all. Although in a previous portion of the opinion the method of assessment pursued is clearly set out, the contention mentioned is disposed of by reference to the January case and by the statement that, were the court at liberty to review the judgment of the assessor, it could not say that the assessment in question included such elements as dividends or profit-earning power or goodwill. It is further said, in effect, that it was the intention of the laws of the state that everything that gives value to the shares of a corporation should be assessed as property of the corporation, and that in determining the value of such property the true value of the shares is a most important element.

In 1906 this court decided the case of *Crocker* v. *Scott,* 149 Cal. 575, [87 Pac. 102]. There the plaintiff, the owner of certain shares of a national bank, brought suit to declare an assessment of those shares illegal. The assessment was made under statutes passed in 1899 (Stats. 1899, p. 96), requiring the assessment of shares in a national bank in accordance with their proportionate interest in the corporate excess of the bank. At the same time the statutes of the state provided that stock in corporations other than national banks should not be assessed at all and the validity of the legislation for the assessment of stock in national banks and, therefore, of the particular assessment involved, turned upon whether or not the laws of the state provided that in the case of corporations other than national banks all of the corporate excess should be assessed. It was held that our

laws did so provide, and the cases of *Burke* v. *Badlam, San Jose Gas Co.* v. *January, Spring Valley Water Works* v. *Schottler,* and *Bank of California* v. *San Francisco* were all referred to and reviewed. After discussing such elements of the market value of the stock as goodwill, dividend or profit-earning power, etc., the main opinion says: "The statutes expressly requiring the assessment of all the property, both tangible and intangible, to be at its full cash value, it is obvious that there is but one method by which the cash value of the intangible property can be ascertained, a method ordinarily much more certain and accurate in its results than any method that can be devised for the ascertainment of the value of real estate and many articles of personal property. It is settled law in this state that the proper method of ascertaining the value of the *franchise* of a corporation is by deducting from the aggregate market value of its shares the value of its tangible property, and taking the difference as the value of the franchise."

Again the main opinion says: "We are satisfied that under the system of taxation in this state as construed by our decisions, all such intangible property may be properly included in the assessment of the corporate franchise of the corporation."

It is true that Justice Henshaw, in his concurring opinion, points out clearly that the word "franchise," as applied to corporate excess, is a misnomer, and concurs with the result reached by the main opinion only upon the ground that the law required that all of the corporate excess should be assessed and that it did not affect the validity of the assessment that it was made under the wrong name. It is also true that, taking even the main opinion as a whole, it cannot be said to hold definitely and finally that corporate excess and franchise are one and the same thing. Nevertheless, as is apparent from the foregoing quotations, it is stated explicitly that the proper method of ascertaining the value of the franchise of a corporation, as that word is used in the constitution as the subject of taxation, is by deducting from the aggregate value of the corporation's shares the value of its tangible properties and that the value of all intangible properties of a corporation may be properly included in an assessment of its franchise.

*Crocker* v. *Scott*, 149 Cal. 575, [87 Pac. 102], was followed by *City of Los Angeles* v. *Western Union Oil Co.*, 161 Cal 204, [118 Pac. 720]. This decision was not handed down until 1911; that is, not until after the adoption of the constitutional amendment, and, therefore, could have no influence in the latter's preparation or adoption. Nevertheless, the decision has some weight, as indicating a settled view at the time as to what was meant by a corporate franchise for the purposes of taxation. The city assessor had assessed the franchise of the defendant corporation, which had no special franchise, at the value of the defendant's corporate excess. The pertinent portions of the opinion are as follows:

"The trial court found as follows: 'In the opinion of the court the value placed thereon, to wit, the sum of $1,323,555 was grossly excessive, but the court holds that it has no jurisdiction to review the action of the board of equalization of said city of Los Angeles in fixing the value of said franchise to be a corporation at the sum of $1,323,555, and also that the method pursued by the assessor in arriving at the value of the franchise was in accordance with the rule established by the supreme court.'

"The trial court truly declares that the method adopted by the assessor in this instance is in accordance with the rule established by the decisions of this court. In *Crocker* v. *Scott,* 149 Cal. 575, 592, [87 Pac. 102], it is said: 'It is settled law in this state that a proper method for ascertaining the value of the franchise of a corporation is by deducting from the aggregate market value of its shares the value of its tangible property, and taking the difference as the value of the franchise. [Citing the California decisions heretofore reviewed.]

"To the argument of the appellant that the assessment in this instance is so grossly excessive as to compel the belief that it was made without the exercise of judgment and therefore carries upon it the impress of constructive fraud [citing authorities], the complete answer is that an excessive valuation by itself alone is not evidence of fraud [citing authorities] and any inference or presumption of fraud arising from merely excessive valuation is at once repelled in this case by proof that the method adopted of fixing that valuation was the method sanctioned and directed by the highest court of the state. . . .

"We have not discussed at length the proposition urged that under the code 'each franchise must be entered in the assessment-book without combining the same with other property or the valuation thereof' (Pol. Code, sec. 3650, subd. 15), and that in this instance under the guise and name of assessing franchise there has been assessed the goodwill, the prospective dividends, and the speculative value of the stock, for the reason that these questions must be deemed concluded by the language of *Crocker* v. *Scott* above quoted."

At the time *Crocker* v. *Scott* was decided the state tax commission which drafted the constitutional amendment either had commenced or was about to commence its labors. The influence upon it of the decisions of this court as to the assessment of corporate franchises is evident. In the commission's report of 1905 there are numerous references to the decisions and to the fact that they authorized the assessment of corporate excess under the name of franchise. Thus, on page 268 of the report, it is said, the italics occurring in the original:

"The general method approved by the courts of California, and originally prescribed by the code, for the determination of the value of these special franchises, rests upon the same ideas as that underlying the determination of the 'corporate excess' described in another chapter. To determine the value of these franchises the assessor is supposed to ascertain the total value of all the outstanding securities, and to deduct from that the value of any visible or tangible property which he may find in the possession of the corporation and the difference is then assessed as the value of the franchise.

"As is explained at more length in the chapter relating to the taxation of banks, the supreme court of California has held that the same method may legally be used for the determination of the value of the *franchise possessed by any corporation,* whether a public-service corporation or not."

The constitutional amendment recommended by the commission in 1906 was not adopted. The commission, however, was continued in existence and recommended to the special session of the legislature of 1910 the amendment which was adopted. Between the session of the legislature proposing this amendment and action by the people upon

it, the commission published another report for the purpose of making clear to the people of the state just what the amendment was intended to accomplish. In this report (Report of 1910, p. 28) occurs this very pointed statement:

"In the leading case of *Spring Valley Water Works* v. *Schottler,* 62 Cal. 69, and other cases following it, the supreme court has repeatedly approved of the following method for making a valuation of the franchises of every class of corporation for purposes of taxation. This method consists in (1) ascertaining the total market value of all outstanding securities, and (2) deducting therefrom the assessed value of any visible or tangible property which belongs to the corporation. The amendment makes no change except to transfer the administration of the law from the counties, which have not succeeded in collecting these taxes, to the state, which can do so with certainty and uniformity. The commission considers this one of the strongest features of the new plan."

In addition to the foregoing expressions by the commission there is the significant fact that two important purposes sought to be accomplished by the amendment would not be accomplished, if by franchise was meant something less or other than corporate excess. One such purpose was to prevent the escape of intangible but yet real values from assessment and taxation. The feeling was prevalent and strong that under the existing system such values were in very large part escaping. This feeling is repeatedly voiced in the reports of the commission. The other purpose was that the matters of assessment committed to the county assessors should be as simple as possible. The escape of intangibles from taxation was attributed largely to the inability of county assessors to cope with the difficulties of properly assessing them. Both these purposes would fail of accomplishment as to corporations if franchise, as applied to them, were to mean anything else than corporate excess, the valuation of which was to be intrusted entirely to state officials. As pointed out in *Crocker* v. *Scott,* 149 Cal. 575, [87 Pac. 102], it is not so difficult to value corporate excess as a whole, but to divide it up and assess separately with any accuracy its various elements is well-nigh impossible. This difficulty would be intensified if the valuation of a part, that of franchises in the strict sense, were to be left

to one set of officials, the state board of equalization, and the valuation of the remainder, including, for example, the element of goodwill, were to be left to another set of officials, the county assessors. Such an arrangement could only increase the existing confusion and difficulty and the consequent escape of intangible personal property from taxation. This is so apparent that it is hardly conceivable that the commission and the legislature, who were seeking to remedy these very things, could have had anything in mind when they proposed committing to state officials exclusively the assessment of corporate franchises, other than the assessment of corporate excesses as a whole and without division.

Finally, there is the most important circumstance that, ever since the adoption of the amendment, the taxing officials of the state have proceeded consistently upon the theory that by corporate franchise was meant corporate excess. Only the clearest and most compelling reasons would now justify us in overturning the construction so placed upon the constitution and consistently adhered to in practical administration for many years, when such overturning would inevitably result in great embarrassment and confusion in the government of the state.

To sum the matter up, it appears that, while the decisions of this court, if carefully considered, do not justify the statement that they positively hold that corporate franchise, as used by the constitution in this connection, and corporate excess are equivalent terms, yet the language of the decisions is sufficient to have justified a general impression at the time of the adoption of the constitutional amendment that they had so held; that the commission which drafted and recommended the amendment and the legislature which proposed it so believed, and proceeded upon that belief; that those responsible for the amendment represented to the people in advocating its adoption that it would have the effect of taxing for state purposes all the intangibles of corporations under the name of franchises; that certain important purposes, which the amendment sought to accomplish, would be frustrated by any other construction; and, finally, that this construction has been followed in practical administration ever since the adoption of the amendment, and to hold now that it was not justified would

cause very great public embarrassment and difficulty. [1]
The combined force of these facts is such as, in our judg-
ment, to leave room for but one conclusion, and that is that
when the constitution, in article XIII, section 14, subdivi-
sion (d), provides for the assessment and taxation of cor-
porate franchises, it means the so-called corporate excess,
although such is not the usual, nor, strictly speaking, a
proper, use of the word "franchise."

It may not be amiss at this point to say, however, that the
use of the word in the sense in which it is used in the con-
stitution is not without precedent. The statutes of Ken-
tucky provide, or did provide, for a corporate "franchise"
tax, and what was there meant by franchise is thus stated
in *Adams Express Co.* v. *Kentucky,* 166 U. S. 171, [41
L. Ed. 960, 17 Sup. Ct. Rep. 527, see, also, Rose's U. S.
Notes] :

"But taking the whole act together, and in view of the
provisions of sections 4078, 4079, 4080, and 4081, we agree
with the circuit court that it is evident that the word 'fran-
chise' was not employed in a technical sense, and that the
legislative intention is plain that the entire property, tan-
gible and intangible, of all foreign and domestic corpora-
tions, and all foreign and domestic companies possessing
no franchise, should be valued as an entirety, the value of
the tangible property be deducted, and the value of the
intangible property thus ascertained be taxed under these
provisions." (See, also, *Hager* v. *American Surety Co.,* 121
Ky. 791, [90 S. W. 550] ; *Marion National Bank* v. *Burton,*
121 Ky. 876, [10 L. R. A. (N. S.) 947, 90 S. W. 944].)

Similarly, in the Alabama Tax Act of 1915, p. 437, the
franchise and the intangible properties of a corporation are
specified in the alternative as one and the same thing. (See
secs. 119, 126, and 127.)

In the Massachusetts Revised Statutes of 1902, chapter 14,
sections 37 and 38, a corporation franchise tax is provided
for, and it is expressly required that the assessment for it
shall be made by valuing the corporate excess. (See, also,
Mass. Stats. 1909, c. 490, sec. 39 et seq.)

[2] From the conclusion so reached, as to the true con-
struction of our constitution, it follows at once as to the
particular assessments involved in this action that the gen-
eral method pursued in making them, that of valuing the

corporate excess without deduction for goodwill or any other element, was proper and was, in fact, the only legal method that could be pursued.

What has already been said disposes in large measure of the remaining questions in the case. The plaintiff complains bitterly of the assessments as excessive and arbitrary. [3] But this is a matter that cannot be gone into by the courts, provided the method pursued in making the assessment is that prescribed by law, except where there is fraud or mistake. If the method pursued is not that prescribed by law, or, what· is much the same thing, if the thing ostensibly valued. and required by law to be valued is not really the thing valued, as in this case if the thing valued as franchise be not franchise as meant by the constitution, the matter can be gone into by the courts and the taxpayer relieved of the assessment. (*Coulter* v. *Weir,* 127 Fed. 897, [62 C. C. A. 429] ; *Louisville etc. Co.* v. *Bosworth,* 230 Fed. 191 ; *Hager* v. *American Surety Co.,* 121 Ky. 791, [90 S. W. 550].) But in the present case, as we have held, the method pursued of assessing the plaintiff's franchise on the basis of valuing its corporate excess was the correct one, and the thing assessed as franchise was the thing which was required to be so assessed by law as expressed in the constitution. This being the case, the discretion of the assessing officials as to the valuation to be fixed is final in the absence of fraud or mistake. In the present case neither fraud nor mistake is alleged. It is alleged that the assessments are excessive and arbitrary. The character of the assessment in this respect may be cogent evidence of fraud, but of itself does not constitute fraud. In order that there be fraud, there must exist, on the part of the assessing official, a conscious failure to exercise that fair and impartial judg-ment which the law requires of him. This is both the general rule and the settled law of this state. (See *Los Angeles Gas etc. Co.* v. *County of Los Angeles,* 162 Cal. 164, 168, [121 Pac. 384].) [4] The allegation that the assessments are excessive and arbitrary does not amount to an allegation of such conscious failure, and is not the equivalent of an allegation that the assessments were imposed fraudulently.

The plaintiff also complains because of the action of the trial court in sustaining objections to numerous questions

asked by plaintiff's counsel of members and officers of the board of equalization as to how the assessments were made. The plaintiff had the right to inquire into the method pursued by the board for the purpose of ascertaining whether the board had pursued the method prescribed by law, that of valuing the corporate excess, but beyond this, in the absence of a charge of fraud or mistake, it could not go. Some of the questions asked were proper as going to the method pursued by the board and should have been allowed. Others went further and into the matter of fixing values, and were properly objected to. The refusal of the trial court, however, to allow questions going to the method of assessment was not prejudicial, inasmuch as the method pursued did nevertheless appear so that the purpose of the questions, so far as such purpose was proper, was subserved.

In this connection the plaintiff makes the point that the provisions of the statute requiring a report from corporations subject to the tax setting forth the items from which the value of their corporate excesses may be deduced is in effect a prescription of the method to be followed by the board in fixing values, and that, therefore, action of the board in fixing values is open to inquiry. **[5]** It is sufficient in reply to say that the statute very clearly does not intend to bind the board to accept or follow the figures submitted to it, but leaves the matter of fixing values entirely to its best discretion. Its exercise of this discretion cannot, as we have said, be inquired into in the absence of allegations of fraud or mistake.

Judgment affirmed.

Shaw, J., Lennon, J., Wilbur, J., Lawlor, J., and Angellotti, C. J., concurred.

Rehearing denied.

All the Justices concurred.