BOLES, Respondent, v. INDUSTRIAL COMMISSION, Appellant.

*October 10—November 5, 1958.*

For the appellant Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondent there was a brief by *White, Davison & White* of River Falls, and oral argument by *Charles E. White.*

BROADFOOT, J. Except for the motion made by claimant's attorney this would be an ordinary workmen's compensation case. The sole question to be determined was the extent of the permanent partial disability of the claimant. This question was to be resolved from the medical evidence in the record.

On the one hand there was the detailed written report of the surgeon who treated the claimant and made the skin grafts, which was supported by his testimony at the hearing. Opposed to that was a short written report by Dr. Haskins, who was not called as a witness.

Based solely upon the record, a question of fact was presented and the commission's finding was amply supported by evidence. In fact, no issue is raised by the claimant as to the sufficiency of the evidence to support the findings and order of the commission.

The statute providing for judicial review of orders and awards by the commission is sec. 102.23 (1), which reads in part as follows:

"Upon such hearing, the court may confirm or set aside such order or award; and any judgment which may theretofore have been rendered thereon; but the same shall be set aside only upon the following grounds:

"(a) That the commission acted without or in excess of its powers.

"(b) That the order or award was procured by fraud.

"(c) That the findings of fact by the commission do not support the order or award."

The circuit court determined that the order was procured by a species of fraud. In several cases this court has determined that the fraud referred to in the statute means fraud of the commission. *Pellett v. Industrial Comm.* 162 Wis. 596, 156 N. W. 956; *Buehler Brothers v. Industrial Comm.* 220 Wis. 371, 265 N. W. 227; *Woman's Home C. R. Club v. Industrial Comm.* 231 Wis. 371, 285 N. W. 745; *General A. F. & L. Assur. Corp. v. Industrial Comm.* 223 Wis. 635, 271 N. W. 385. In its opinion the circuit court stated that it was familiar with the rule announced in said cases. Thus the issue is not fraud on the part of any of the parties or their attorneys, but we must determine whether or not the commission itself committed fraud.

There are many types of fraud but here we must consider fraud as applied to public officers. In 43 Am. Jur., Public Officers, p. 254, sec. 511, appears the following:

"In the absence of any proof to the contrary, there is a presumption that public officers have properly discharged the duties of their office and have faithfully performed those matters with which they are charged. This presumption applies to federal, state, county, and municipal officers."

That quotation has been cited with approval in *Georgiades v. Glickman,* 272 Wis. 257, 75 N. W. (2d) 573; *State ex rel. Nelson v. Rock County,* 271 Wis. 312, 73 N. W. (2d) 564; and *Bohn v. Sauk County,* 268 Wis. 213, 67 N. W. (2d) 288. In 17 Words and Phrases (perm. ed.), p. 572, under the subhead "Official misconduct or bad faith" and in the pocket supplement therein on page 130 are reports of cases dealing with the word "fraud" as applied to public officers. Among them are two cases decided by the supreme court of California, quotations from which follow:

"In order that there be fraud, there must exist, on the part of the assessing official, a conscious failure to exercise that fair and impartial judgment which the law requires of him. This is both the general rule and the settled law of this state." *Miller & Lux v. Richardson,* 182 Cal. 115, 128, 187 Pac. 411.

"Fraud, being a term which imputes venality and corruption to the person charged, should be clearly proved and satisfactorily established, especially where the persons charged are public officers vested with wide discretionary powers. If official acts may be explained on any reasonable theory of duty honestly, even though mistakenly performed, it must be resolved in favor of the presumption, which may not be lightly ignored." *Hannon v. Madden,* 214 Cal. 251, 267, 5 Pac. (2d) 4.

We have been unable to find a Wisconsin case directly in point. In *State ex rel. Schwenker v. District Court*, 206 Wis. 600, 240 N. W. 406, this court said (p. 608) :

"Where an official having discretion in a certain matter acts upon his judgment in good faith, although erroneously, such act is not corrupt within the meaning of the statute, and likewise if, in the exercise of his discretion, he takes no action although he errs, he is not guilty of neglect as that term is used in the sections quoted."

In that case the court was dealing with the violation of a penal statute but it states the general rule. It is fundamental that fraud cannot be found unless proved by clear and satisfactory evidence. In view of the established law we cannot agree with the circuit court that this record herein discloses any fraud on the part of the commission. It indicated that it was not overawed because Mr. Knowles was in the case by refusing his request to have the hearing held at St. Paul where his medical witness would be more readily available.

The claimant bases her whole argument on the fact that Mr. Knowles was acting governor on the day of the hearing. It is not claimed that he was acting governor at the time the examiner made and filed his findings and order, nor that he was acting governor when the commission reviewed the findings and order. There seems to be no contention that on the days Mr. Knowles was lieutenant governor he could not practice law. The argument is based upon possibilities of what might happen if the governor or acting governor appeared before administrative agencies.

One contention is that Mr. Knowles might be acting governor on a date when there was a vacancy on the commission and it would be his duty to make an appointment thereto. At the time of the hearing there was no vacancy on the commission. At that time the term of one of the commissioners

would expire on June 1, 1957, one on June 1, 1959, and one on June 1, 1961. The term of Mr. Knowles as lieutenant governor would expire on the first Monday in January, 1957. It is obvious that he would have no appointment to make. In fact, we know of no appointment to the commission ever having been made by an acting governor in the temporary absence of the governor. An appointment even by the governor must have confirmation by the senate. Such an argument does not establish fraud on the part of the commission.

It is further contended that to permit the acting governor to appear as an attorney representing private clients before a commission is against the public policy of the state. The constitution does not limit the rights of a state officer who is an attorney to appear in court or before a commission. The legislature has studiously avoided the question both as to state officers and members of the legislature. Bills have been introduced to limit the right of members of the legislature to practice law while members. Those bills have been defeated. By defeating them the legislature has announced its public policy in that regard. The legislature has also announced its public policy with regard to the right of the lieutenant governor to practice law by fixing his salary at a sum that requires him to get most of his livelihood by his outside activities.

The hearing was held before an examiner. The examiners of the Industrial Commission are not appointed by the governor. They have civil-service status and the only way they can be removed from office by anyone is for misconduct. We know them to be men of courage and conscience, who are not intimidated or influenced by the governor or anyone else. Few, if any, administrative agencies in this country have had more words of commendation than has the Industrial Commission of Wisconsin. It handles thousands of

cases involving workmen's compensation annually and the courts are asked by claimants to review very few of its orders and awards.

It is apparent from the record that the attorney for the claimant knew in advance of the hearing that the governor would be out of the state on that date. He had briefed the subject and quoted what he felt were controlling authorities at the hearing. He waited until his case had been completed before raising the issue with which we are faced. The record does not show that he had communicated this to the commission or to Mr. Knowles prior to the hearing. He made no objection to the appearance by Mr. Knowles at the beginning of the hearing. It might be held that this constituted a waiver by the claimant. We do not, however, decide the case on that ground as the issue has not been raised.

It should be remembered that Mr. Knowles had secured the presence of a medical witness from out of the state to be in attendance at the hearing. It is well known that medical witnesses exact substantial fees for such appearances. Mr. Knowles was faced with proceeding with his witness or incurring much added expense on the part of his client. Whether Mr. Knowles made a wise or unwise decision; whether one of us under the same circumstances would have made the same choice; whether Mr. White's conduct could be criticized; or whether the commission made a mistake, are all beside the point. We are confronted with a charge of fraud on the part of the commission. This means the type of fraud required to invalidate an act of public officers. In other words, did the commission consciously fail to exercise fair and impartial judgment in affirming the findings and order of the examiner? The burden of proving the charge was on the claimant. She has failed to prove fraud by the type and quantum of proof required.

A review of the record indicates that no unbiased finder of facts could well come to any other conclusion than that

found by the examiner and the commission. To ask the same body to make any other determination on the basis of this record would be futile. There is no contention on the part of the claimant that she has any other or further proof to offer. She had a full opportunity to present any testimony she desired at the hearing at Hudson.

In the *General A. F. & L. Assur. Corp. Case, supra,* a state senator wrote a letter to one of the commissioners requesting an expeditious handling of a case and expressed the hope that something could be done that "will be worthwhile." This court there stated that that did not constitute a showing of fraud on the part of the commission. In that case the court said (p. 652) :

"The commission constitutes a body of expert triers of fact—not a lay tribunal. It is to be supposed that it will not be swayed by *ex parte* communications, and that it will be able to protect itself against importunities and requests that might bias a juror. We may express our disapproval of such requests and our assumption that the informality of administrative proceedings occasionally leads to the making of them without improper motives or full appreciation of the fact that they have no proper place in the proceedings, but these comments have no legal materiality. Jurisdiction to review the award is limited in this respect to cases of fraud on the part of the commission, and regulation of the conduct of parties and persons in such proceedings is committed to the commission and not to the court."

That explains the difference between the cases above referred to and those dealing with unauthorized communications with a member or members of a jury.

*By the Court.*—Judgment reversed. Cause remanded with directions to enter a judgment confirming the order of the Industrial Commission.

MARTIN, C. J., and BROWN and FAIRCHILD, JJ., took no part.