ANTON J. MOE, Executive Director Wisconsin EducationalCommunications Board
You have requested my opinion regarding the relationship of your agency (hereinafter ECB) with so-called "friends organizations" (hereinafter "Friends"), which you describe as nonprofit entities incorporated for the purpose of assisting and promoting the activities of the ECB as a licensee of educational radio and television stations. You ask the following questions:
 Specifically, the Educational Communications Board is desirous of knowing what type of fiduciary relationship is appropriate with these types of organizations. Can these organizations hold funds for the ECB solicited from its viewers and listeners over the broadcast facilities licensed by the Federal Communications Commission to the ECB and/or funds solicited by direct mail through use of the facilities and resources of the ECB?
 Is it permissible for the ECB to assist the friends by maintaining membership records and in raising funds with agency personnel and resources with a prior understanding that the funds, minus the amount needed by the friends for administrative costs, will be transferred directly to the ECB upon request for its disposition? The amount of administrative costs by the respective friends groups would vary according to the longevity and scope of activities engaged in by these friends organizations.
Because the ECB has special legal counsel regarding the legality of its broadcast and communications activities in light of Federal Communications Commission rules and regulations, this opinion will *Page 164 
not consider the possible application of such federal law to your questions.
The powers and duties of the ECB are set forth in sec. 39.11, Stats. The following subsections of that provision are pertinent to the questions which you raise:
 39.11 Educational communications board; duties. The educational communications board shall:
 (1) Receive and disburse state, federal and private funds and engage or contract for such personnel and facilities as it deems necessary to carry out the purpose of this section.
 (2) Plan, construct and develop a state system of radio broadcasting for the presentation of educational, informational and public service programs and formulate policies regulating the operation of such a state system.
. . . .
 (4) Initiate, develop and maintain a comprehensive state plan for the orderly operation of a state-wide television system for the presentation of noncommercial instructional programs which will serve the best interests of the people of the state now and in the future;
. . . .
 (6) Furnish leadership in securing adequate funding for statewide joint use of radio and television for educational and cultural purposes, including funding for media programming for broadcast over the state networks. The educational communications board may submit joint budget requests with state agencies and other nonstate organizations or corporations for the purposes stated above;
. . . .
 (14) Coordinate the radio activities of the various educational and informational agencies, civic groups, and citizens having contributions to make to the public interest and welfare.
Your first question, in effect, asks whether or not Friends can hold funds for the ECB that were solicited by Friends through use of the *Page 165 
facilities and resources of the ECB. In this regard, sec.20.906(1), Stats., provides:
 Unless otherwise provided by law, all moneys collected or received by any state agency for or in behalf of the state or which is required by law to be turned into the state treasury shall be deposited in or transmitted to the state treasury at least once a week and also at other times as required by the governor or the state treasurer and shall be accompanied by a statement in such form as the treasurer may prescribe showing the amount of such collection and from whom and for what purpose or on what account the same was received. All moneys paid into the treasury shall be credited to the general purpose revenues of the general fund unless otherwise specifically provided by law.
In 38 Op. Att'y Gen. 421 (1949), this office was called upon to interpret sec. 14.68(1), Stats. (1948), one of the forerunners of sec. 20.906(1), Stats. It was concluded that insofar as university campus organizations derived money from operations carried on by their members and not out of operations carried on by the university, their funds were not received for or in behalf of the state and, therefore, did not have to be deposited in the state treasury. The opinion specifically stated:
 It is clear that the mere fact that student activity organizations are required to submit to an audit by a university representative does not render their activities functions of the university or state and does not render their funds university or state funds. It is also my opinion that the mere use of university facilities as a place in which to carry on their activities does not do so. Presumably the regents and the officers so authorized by them have used a proper discretion in permitting the use of university property for activities connected with student life and interests.
Id. at 422.
A similar presumption would apply here that the ECB and its authorized agents have acted properly in permitting the use of ECB facilities and resources to help secure adequate funding for statewide joint use of radio and television for educational and cultural purposes. *Page 166 
Sec. 39.11(6), Stats.; Boles v. Industrial Comm., 5 Wis.2d 382,387, 92 N.W.2d 873 (1958).
This same rationale was followed in 39 Op. Att'y Gen. 495, 497 (1950), where upon examination of similar statutes, it was stated:
 It may be that when these funds were collected by the various student groups on a voluntary basis some of these items were subject to student ownership and control and did not belong to the college nor to the state. As pointed out to the university in 38 O.A.G. 421, the auditing of student activity funds by a university representative and the use of university facilities do not of themselves render such funds state funds. The essential question to be decided as to each such organization is: Do its receipts arise out of operations carried on by the university?
Moreover, under the plain language of sec. 20.906(1), Stats., it is clear that the requirement of deposit into the state treasury does not exist until the moneys involved are actually "collected or received" by the state agency. Therefore, if the funds involved here are sent directly by the various contributors to the Friends, such funds would not be "collected or received" by the ECB until they are transferred to it by the Friends. At that time, these moneys would become part of the ECB's appropriation pursuant to sec. 20.225(1)(g), Stats.
Thus, the answer to your first question is that sec. 20.906(1), Stats., can be interpreted as allowing Friends to hold the above-described funds for a reasonable time agreed upon by the Friends and the ECB.
Your second question, in effect, asks whether or not the ECB can properly assist Friends in raising funds with a prior understanding that such funds, minus necessary Friends' administrative costs, would be transferred directly to the ECB upon request for its disposition.
Section 39.11(1), Stats., gives the ECB the power to "contract for such personnel and facilities as it deems necessary to carry out the purpose of this section." Under sec. 39.11(6), Stats., a primary purpose of the law is "securing adequate funding for statewide joint use of radio and television for educational and cultural purposes." It is my opinion that these provisions furnish ample authority for the ECB *Page 167 
to contract with Friends to assist in raising funds for educational radio and television in this state. The specific details of any such contract, of course, would have to be agreed to by the parties on a case-by-case basis.
There is, however, one important limitation to the state's power to contract that must be mentioned here. It is well-settled that a state cannot by contract bargain away its right to use the police power or by contract divest itself of power to provide for acknowledged objects of legislation falling within the domain of police power. 72 Am. Jur. 2d States, Territories, andDependencies sec. 73, at 468; 81A C.J.S. States sec. 155, at 606. Thus, a contract whereby state officers delegate to another their power to make discretionary determinations is invalid. 81A C.J.S.States sec. 157b, at 613.
BCL:SMS