MEXICAN PETROLEUM CORPORATION *vs.* ZENAS W. BLISS *et al.,* Board of Tax Commissioners.

WILSON & CO. *vs.* ZENAS W. BLISS *et al.,* Board of Tax Commissioners.

NATIONAL ANILINE & CHEMICAL CO., INC., *vs.* ZENAS W. BLISS *et al.,* Board of Tax Commissioners.

SWIFT & COMPANY *vs.* ZENAS W. BLISS *et al.,* Board of Tax Commissioners.

RICHARD W. JENNINGS, Gen. Treas., *vs.* MORRIS & CO.

MEXICAN PETROLEUM CORPORATION *vs.* ZENAS W. BLISS *et al.,* Board of Tax Commissioners.

WILSON & CO. *vs.* ZENAS W. BLISS *et al.,* Board of Tax Commissioners.

MORRIS & CO. *vs.* ZENAS W. BLISS *et al.,* Board of Tax Commissioners.

SWIFT & COMPANY *vs.* ZENAS W. BLISS *et al.,* Board of Tax Commissioners.

NATIONAL ANILINE & CHEMICAL COMPANY, INC., *vs.* ZENAS W. BLISS *et al.*, Board of Tax Commissioners.

JULY 9, 1920.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

*(1)   Constitutional Law.   Corporate Excess Tax.*

Pub. Laws, 1912, cap. 769, § 11, sub. sec. (2) as amended by Pub. Laws, cap. 784; § 3, which authorizes the Board of Tax Commissioners in the case of manufacturing corporations or corporations which derive their profits from the sale or use of tangible personal property when such corporations also do business outside this State, to apportion to this State such a proportion of the value of the property ascertained under the provisions of the Act, as the fair cash value of their real estate and tangible personal property in this State bears to the fair cash value of their entire real estate and tangible personal property then used in their business, *and in any case to which these proportions are not equitably applicable, in such proportion as is equitable,* is not in violation of Art. III and of sec. 2 of Art. IV of the Cons. R. I., as a delegation to the Board of Tax Commissioners of legislative power or of the taxing power in violation of sec. 10 and 15 of Art. IV, nor does it violate Art. I sec. 2, as an unfair distribution of the burdens of the State, and as a law not made for the good of the whole nor is it in violation of either the due process clause or the equal protection clause of the fourteenth amendment of the Cons. U. S.

ACTION AT LAW to recover a tax and miscellaneous petitions brought to recover back taxes paid to the State. Heard together on constitutional questions certified from Superior Court.

RATHBUN, J.   The case of *Richard W. Jennings, General Treasurer,* v. *Morris & Company,* is an action at law to recover a tax assessed by the State Board of Tax Commissioners against said company.   Each of the other cases is a miscellaneous petition to recover back from the State a tax assessed against the petitioner by said Board and paid by the petitioner to the General Treasurer.   No trial has been had in any of the cases.   In each case the constitutionality of an act of the General Assembly was brought in question upon the record by the pleadings and the cases were severally certified to this court, in accordance with Chapter 298, General Laws, 1909, for the determination of the con-

stitutional questions.   The same constitutional questions being presented in each case, the cases were heard together.

The questions all relate to the validity of Sub-section (2), Section 11, of the Tax Act of 1912, Chapter 769, of the Public Laws of 1912, as amended by Section 3, of Chapter 784, of the Public Laws of 1912.   The material portions of the Tax Act of 1912, amended by Chapter 784, of the Public Laws of 1912, and by Chapter 1180, of the Public Laws of 1915, are as follows:

"Sec. 9.   Every corporation and joint stock company or association, wherever incorporated, carrying on business for profit in this state, all hereinafter referred to under the term 'corporation' . . . in addition to taxes on its real estate and tangible personal property locally or otherwise assessed, shall pay an annual tax to the state upon the value of that portion of its intangible property hereinafter called its corporate excess, and for the purpose of assisting in the determination of the amount of such tax shall, on or before the first day of March in each year, return to the board of tax commissioners, under the oath of its treasurer or person performing the duties of the treasurer, or of a duly authorized agent or officer, as of December thirty-first next preceding, unless otherwise provided:

"(1)   The name and location within this state of such corporation; and if it have no location in this state, where such corporation is located.

"(2)   The amount of its capital stock authorized and the amount outstanding, with the number of shares of each; and if there are different classes of stock, the amounts and numbers of shares of each class.

"(3)   The average fair cash value of each class of its capital stock for three years next prior to the first day of the next preceding January, or for such lesser time as such corporation has been carrying on business.   A majority of the board of directors, or the president, chairman, treasurer, assistant treasurer or secretary, or any duly authorized agent or officer of such corporation, shall estimate and appraise the

capital stock at its average fair cash value for such time. Such estimate shall be signed by the directors or officer or agent making it, and shall be attached to the corporate return.

"(4) The amount and value of its bonded indebtedness; the amount and value of its indebtedness evidenced by debentures; and also the amount and value of its other indebtedness incurred for the acquisition of real estate, or of tangible personal property; and if any time the board of tax commissioners believes that any other indebtedness is not *bona fide* but is used as a cover for distribution of profits, the board may require the return of the several classes of indebtedness.

"(5) The value in each city or town, as assessed for taxation at the next prior assessment, of its real estate and tangible personal property located in this state including the value, as fixed by the assessors of taxes in any city or town of any property exempt under any local exemption.

"(6) The location and the fair cash value of the real estate and tangible personal property, if any, used in its business, and located outside this state, to the best knowledge and belief of the person making the return. And the return shall show whether the valuation returned is the value assessed for taxes in such other jurisdiction or is an estimated value.

"(7) A list of the securities and other property and the value thereof owned by such corporation as its own property and not used in its business, or which is exempt from taxation by the laws of the United States or of this state, and any other property which such corporation claims to be exempt from taxation in this state or not taxable by law in this state, with the reason for any such exemption or nontaxation.

"Sec. 10. The board of tax commissioners shall annually fix from the return aforesaid, or from other information, the average fair cash value of each class of the capital stock of each corporation, for the said year or lesser time the cor-

poration has carried on business (except as otherwise provided in this act), and shall mail a notice of such value to each corporation on or before the first day of May in each year; but failure to receive such notice shall not invalidate such valuation or relieve the corporation from compliance with the requirements of this section or of this act, or excuse the non-payment of the tax.  If any corporation is not satisfied with the valuation so fixed, said board, upon being so notified on or before the tenth day of May, shall fix an early day at its office when said corporation can be heard to show cause why said valuation should be changed, and after such hearing said board shall fix such valuation as is proper.

"Sec. 11.   Each of the corporations required to make the return aforesaid shall be taxed upon the value of its corporate excess, which shall be determined by the board of tax commissioners, for the purposes of assessment and taxation, as follows:

"(1)   To the value of the total number of its shares outstanding determined as aforesaid there shall be added, as part of the measure of value of the property of such corporation:   (a) the total value of its outstanding bonded indebtedness, if any; (b) the total value of its outstanding indebtedness evidenced by debentures, if any; (c) the total value of its other indebtedness, if any, incurred for the acquisition of real estate or of tangible personal property, and such other of its indebtedness as such corporation shall return; (d) and such other of its indebtedness, if any, as is a cover for a division of its profits.

"(2)   In the case of corporations also carrying on business outside of this state, a portion of the value ascertained under the prior clause shall be apportioned to this state as follows: In the case of corporations deriving their profits principally from the ownership, sale, or rental of real estate, and in the case of manufacturing corporations and such other corporations as derive their profits principally from the sale or use of tangible personal property, such a proportion as the fair cash value of their real estate and tangible personal property in

this state on December thirty-first next preceding bears to the fair cash value of their entire real estate and tangible personal property then used in their business, without any deduction on account of any mortgage or incumbrance thereon; in the case of corporations deriving their profits principally from the holding or sale of intangible property, such a proportion as their gross receipts for the year ending on December thirty-first next preceding in this state bear to their total gross receipts for such year both within and without this state; and in any case to which these proportions are not equitably applicable, in such proportion as is equitable. And said board shall have power to require, from time to time, such reports, sworn to as hereinbefore provided, as will give said board the information necessary to make said apportionment.

"(3)    From the total value ascertained under the first clause of this section; or, in the case of corporations also carrying on business outside of this state, from the portion of the value apportioned to this state under the next preceding clause; there shall be deducted the assessed value of their real estate and tangible personal property located in this state as last assessed for local or state taxation, including in the deduction the value of any such property exempt from taxation by local authority.

"(4)    Said board shall also make such allowance for such property as is exempt from taxation, or is not taxable in this state, by deducting it from the entire value ascertained under the first clause of this section, or from the portion assigned to this state, or from the portion assigned to other jurisdictions, as the circumstances make equitable.

"(5)    The remainder shall constitute the value of the 'corporate excess,' for the taxation of said corporation.

"Said board, on the first business day of June in each year, shall make up a list of all corporations subject to tax upon their corporate excess, with the amount of the corporate excess of each, and shall assess a tax upon each such corporation at the rate of forty cents for each one hundred

dollars of the amount of its corporate excess, and enter the amount of the tax against the name of each such corporation."

(1)    Each corporation contends that Sub-section (2), Section 11, of the Tax Act of 1912, as amended by Chapter 784 of the Public Laws of 1912, is unconstitutional in that it (1) delegates the power of taxation to the Board of Tax Commissioners; (2) imposes a tax upon property not located in this state; and (3) permits discrimination among corporations of the same class.

Each corporation objecting to the tax is a corporation doing business in this state and "also carrying on business outside of this state" against whom has been assessed by said Board a tax at the statutory rate on a portion of the taxpayer's intangible assets, or in other words, upon its "corporate excess."

In each case it is alleged that the proportion of the total corporate value apportioned to this State had no relation whatever to the proportion which the fair cash value of the corporation's real estate and tangible personal property within the State of Rhode Island on the last day of the year in question bore to the fair cash value of its entire real estate and tangible personal property then used in its business, but that the fraction of apportionment on which the tax was based was arrived at by the Board in purported pursuance of that portion of Sub-section (2) of Section 11 of the tax Act of 1912, which provides as follows: "and in any case to which these proportions are not equitably applicable, in such proportion as is equitable."

It is contended that inasmuch as Sub-section (2) of Section 11 authorizes the Board of Tax Commissioners to apportion to Rhode Island a portion of the corporation's total corporate value (as defined in Sub-section (1), Section 11), by a method other than that expressly applicable to "manufacturing corporations and such other corporations as derive their profits principally from the sale or use of tangible personal property," when the corporation is of the above

class, that Sub-section (2), Section 11, is unconstitutional and void for the reasons: that such authorization is a delegation to the Board of Tax Commissioners of legislative powers, in violation of the provisions of Article III and of Section 2 of Article IV of the Constitution of the State of Rhode Island; that such authorization is a delegation to the Board of Tax Commissioners of the taxing power, in violation of the provisions of Sections 10 and 15 of Article IV of the Constitution of the State of Rhode Island; that such authorization operates as an unfair distribution of the burdens of the State and is a law not made for the good of the whole, in violation of the provisions of Article I, Section 2 of said Constitution; that such authorization operates to deprive the taxpayer of its property without due process of law, in violation of the provisions of Section 1 of Article XIV in amendment of the Constitution of the United States; that such authorization operates to deny to the taxpayer the equal protection of the laws in violation of the provisions of said Section 1 of said Fourteenth Amendment.

What was the intention of the legislature as expressed in the Tax Act of 1912 as amended? Did the legislature intend to direct or authorize the Board of Tax Commissioners to tax property outside of the State? In *Pittsburgh C. C. & St. L. Rwy. Co.* v. *Backus,* 154 U. S. 421, Mr. Justice BREWER said: "It is not to be assumed that a State contemplates the taxation of any property outside its territorial limits, or that its statutes are intended to operate otherwise than upon persons and property within the State. It is not necessary that every section of a tax act should in terms declare the scope of its territorial operation. Before any statute will be held to intend to reach outside property the language expressing such intention must be clear." From a reading of the entire act it is clear that the legislature only intended to direct that a tax be assessed upon that portion of the corporation's intangible property which is capital doing business within this state. The whole of the intangible property of a corporation, the business of which is confined to Rhode

Island is within the State and the whole of such property taxable in Rhode Island under said act must of necessity be within the State. By the process of elimination provided in the act all intangible property taxable in Rhode Island of a corporation "also carrying on business outside of this state" must of necessity be within the State.

It is contended that the total corporate value of a manufacturing corporation or such corporation as derives its profit principally from the sale or use of tangible personal property cannot be apportioned to this State by the gross receipts method; in other words, if the corporation be one of the above class that the property method alone can be employed. It is also contended that the Board, in apportioning to this state a portion of the total corporate value of a corporation "also carrying on business outside of this state," must apply one of the two rules specifically set out in the act. Neither of these rules was intended to be used as a yardstick but only as a guide in assisting the Board to determine the amount of property, tangible and intangible, engaged in business within this state.

The Board of Tax Commissioners is authorized to determine the valuation of the several items which go to make up the total corporate value of a corporation, namely, the fair cash value of the capital stock; the total value of its outstanding bonded indebtedness, if any; the total value of its outstanding indebtedness evidenced by debentures, if any; the total value of its other indebtedness, if any, incurred for the acquisition of real estate or of tangible personal property, and such other indebtedness as the corporation shall return; and other of its indebtedness, if any, as is a cover for a division of its profits. The sum of values of these items constitute the corporation's total corporate value which is its whole capital wheresoever employed.

The Board is directed, in the case of a corporation "also carrying on business outside of this state," after making such deductions as are provided for in Sub-section (4), Section 11, to apportion to Rhode Island such a portion of

said total corporate value as is engaged in business in this State. This apportionment is not and cannot be made by any iron rule. But the Board determines, as a question of fact, using all information available, how much of the corporation's capital is engaged in business within this State. From the amount so apportioned to this State is deducted the assessed value of the real estate and tangible personal property located in this State and also the value of any such property which is exempt from local taxation.

The result is termed "corporate excess," and is that taxable portion of the corporation's intangible property which is engaged in business in this State.

The Tax Act of 1912 was more than a revenue measure. It was the introduction of a new system of taxation which amounted to an entire revision of the theory and practice of assessing and collecting taxes for the State. But the new theory and practice adopted were not experimental. Intangible assets of public service corporations and also private corporations had been taxed in many states. The Rhode Island Tax Act applies only to private corporations.

It is well settled that a state may tax that portion of a corporation's intangible property which is capital doing business within the State. A leading case declaring this right is *Adams Express Co.* v. *Ohio*, 166 U. S. 185, in which the court said: "But this contention" (that the only property within the State is tangible property) "practically ignores the existence of intangible property, or at least denies its liability for taxation. In the complex civilization of today a large portion of the wealth of a community consists in intangible property, and there is nothing in the nature of things or in the limitations of the Federal constitution which restrains a State from taxing at its real value such intangible property. . . . It may be true that the principal office of the corporation is in New York, and for certain purposes the maxim of the common law was '*mobilia personam sequuntur*'; but that maxim was never of universal application, and seldom interfered with the right of taxation.

*Pullman's Palace Car Co.* v. *Penn.*, 141 U. S. 18 and 22.
. . . . In conclusion let us say that this is eminently a practical age; that courts must recognize things as they are and as possessing a value which is accorded to them in the markets of the world, and that no fine spun theories about *situs* should interfere to enable these large corporations, whose business is carried on through many states, to escape from bearing in each state such burden of taxation as a fair distribution of the actual value of their property among those states requires."

Statutes of several states have provided for taxing that part of the corporation's capital, including intangible property, which is engaged in business within the state and courts have recognized the ability of assessing boards to place a value upon that portion of a corporation's capital which is engaged in business within the state, also to place a separate value upon the intangible property engaged in business within the state even when the corporation is doing business in another state. *Adams Express Co.* v. *Kentucky*, 166 U. S. 171; *People of New York et al.* v. *Miller*, 112 N. Y. App. Div. 880, followed *People* v. *Kelsey*, 105 N. Y. App. Div. 175, affirmed in 182 N. Y. 526; *People* v. *Roberts*, 37 N. Y. App. Div. 1.

The intangible property of corporations had been taxed for many years in Rhode Island but such property was not taxable against the corporation prior to the passage of the Tax Act of 1912, either by the state or local jurisdictions. Under the old law an attempt was made to reach this intangible value by taxing locally corporate stocks in the hands of the holder upon the full and fair cash value of the stock less the assessed valuation of the real and tangible personal property of the corporation. The old law, in attempting to avoid the injustice of double taxation of this class of property, proved impracticable to such an extent that little revenue was derived from the enormous amount of corporate intangible property known to exist in the State. It was the intent of the new law to reach this intangible prop-

erty directly. This feature of the Tax Act, the taxation of the intangible property of corporations at the source is most important, not only from the standpoint of the revenue produced, but also because of the theory of taxation involved. For history of such legislation see Chapters 57 and 58, G. L., 1909; Chapters 39 and 40, 1872 Revision; Chapter 38, 1857 Revision.

When the legislature has definitely specified the property which is to be taxed it must of necessity leave to an administrative board the details of arriving at the value of that property. In *Western Union Telegraph Co.* v. *Gottlieb*, 190 U. S. 425, the court used the following language: "But it is contended that the method of assessment followed in these cases was sustained because they were prescribed by the legislature, and that in the case at bar the method adopted was not prescribed or authorized by the laws of Missouri. . . . The decision, constituting, as it does, an interpretation of the constitution and laws of the State, is not open to dispute here. If it were, it would seem incontestable that the State could either prescribe the method or confer upon its taxing officers, the power to adopt a suitable one. And there is nothing in the *Adams Express Co.* cases to the contrary."

The power to tax is a legislative power and that power has not been delegated. The legislature fully exercised that power when it determined that a tax should be assessed, upon whom it should be imposed, the property to be taxed, and the rate of the tax upon the valuation of the property. The legislature has established a definite class upon whom the tax is to be imposed, made classification based upon the natural and substantial difference between corporations of the class designated and individual, and between the corporations designated and other corporations, and the classification is neither arbitrary nor unreasonable. In *Southwestern Oil Co.* v. *Texas*, 217 U. S. 114, it was held that a statute imposing a tax upon wholesale dealers in mineral oils, without taxing wholesale dealers in other com-

modities, did not violate any of the provisions of the Constitution of the United States. In *Armour Packing Co. v. Lacy*, 200 U. S. 226, it was held·that a statute imposing a tax "Upon every meat packing house doing business in this state," but imposing no tax upon persons selling the products of a meat packing business or persons engaged in the business of packing articles of food other than meat did not violate the equal protection clause of the Fourteenth Amendment. See also *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540, 562; *Cargill Co. v. Minnesota*, 180 U. S. 452; *Kidd* v. *Alabama*, 188 U. S. 730; *Savannah, Thunderbolt, etc., Ry. Co.* v. *Savannah*, 198 U. S. 392.

Corporate excess, as defined in the Tax Act, is a form of intangible property. It is as much property as real or tangible personal property. It consists in general of those intangible assets of a corporation which are over and above the mere value of its tangible, real and personal estate. The valuation of this intangible property, and of the items involved in its computation, can be determined with as much accuracy as the valuation of tangible property. The Board is authorized only to determine facts,—that is to value property. Valuation is the basis of all taxation, and the legislature must leave to some administrative board the power to determine valuation. For the purpose of carrying out the legislative will the Tax Act created a Board of Tax Commissioners vested with only administrative powers. To this Board all necessary information is furnished with reference to the business of the corporation taxed, by annual returns, additional reports and by examination of the books of the corporation. From the information thus obtained the Board is authorized to determine the values of the several items which are necessary for a proper determination of corporate excess. The Board is not bound to accept the valuation placed upon these items by the corporations in their returns, but determines for itself these values from any information available.

The act permits no discrimination among corporations of the same class and we have pointed out: that the legislature delegated none of its taxing powers to the Board of Tax Commissioners; that the intention of the legislature, as expressed in the Tax Act, was to tax only property located within the state; and that the classifications made by the act are neither arbitrary nor unreasonable; and as the act provides that the corporation may be heard before the Board on the question of the value of its capital stock and that if the corporation is "aggrieved by the valuation of its capital stock or the tax assessed against it as finally fixed by the board of tax commissioners" said corporation may, on petition, have both questions determined by the Superior Court, it cannot be said that said Tax Act deprives a corporation of due process of law.

In *Davidson* v. *New Orleans,* 96 U. S. 97, the court said "We lay down the following proposition, as applicable to the case before us: That whenever, by the laws of a state, or by state authority, a tax, assessment, servitude, or other burden is imposed upon property for the public use, whether it be for the whole state or some more limited portion of the community, and those laws provide for a mode of confirming or contesting the charge thus imposed, in the ordinary courts of justice, with such notice to the person, or such proceeding in regard to the property, as is appropriate to the nature of the case, the judgment in such proceedings cannot be said to deprive the owner of his property without due process of law, however obnoxious it may be to other objections." See also *Lent* v. *Tillson,* 140 U. S. 316; *Chicago &c. Ry. Co.* v. *Minneosta,* 134 U. S. 418; *Bell's Gap. R. R. Co.* v. *Pennsylvania,* 134 U. S. 232; *Walston* v. *Nevin,* 128 U. S. 578; *Spencer* v. *Merchant,* 125 U. S. 345; *Missouri Pacif. Ry. Co.* v. *Humes,* 115 U. S. 512; *Kentucky R. R. Tax Cases,* 115 U. S. 321; *Hagar* v. *Reclamation District,* 111 U. S. 701.

We hold that Sub-section (2), Section 11, of Chapter 769 of the Public Laws of 1912 as amended by Section 3 of

Chapter 784 of the Public Laws of 1912, violates none of the provisions of the Constitution of the State of Rhode Island and is not in violation of either the due process clause or the equal protection clause of the Fourteenth Amendment of the Constitution of the United States.

The papers in each of the above cases with our decision certified thereon are ordered sent back to the Superior Court for further proceedings.

*Green, Hinckley & Allen,* for Mexican Petroleum Corporation and Wilson & Company. *Arthur M. Allen, Chauncey E. Wheeler,* of counsel.

*Edward R. Jastram, Claude R. Branch, Edwards & Angell,* for Swift & Company, Morris & Company and National Aniline & Chemical Company, Inc.

*Herbert A. Rice, Attorney General,* for State Board of Tax Commissioners.