[S. F. No. 9324.  In Bank.—December 28, 1921.]

## THE UTAH CONSTRUCTION COMPANY (a Corporation), Appellant, v. FRIEND WILLIAM RICHARDSON, as Treasurer, etc., Respondent.

[1] TAXATION—CORPORATE FRANCHISES—METHOD OF VALUATION—DISCRETION OF BOARD OF EQUALIZATION — CONSTITUTIONAL LAW.— Under section 14 of article XIII of the constitution, requiring that all franchises, other than those expressly provided for in the section, shall be assessed "in the manner to be provided by law," it was permissible for the legislature to commit to the board of equalization the duty of selecting the mode of ascertaining the cash value of the different elements dealt with in determining corporate excess instead of requiring the board to compute assessments according to a value-finding rule prescribed by the legislature.

[2] ID.—ASSESSMENT BOARDS—PERFORMANCE OF OFFICIAL DUTY—PRESUMPTION.—It is a rule applicable to assessors and to boards having assessing powers that it is presumed that the assessing officers have properly performed the duties entrusted to them, and, consequently, that their assessments are both regularly and correctly made.

[3] ID.—RECOVERY OF FRANCHISE TAXES—BASIS OF TAXATION—BURDEN OF PROOF.—In an action to recover corporation franchise taxes paid to the state under protest, the burden is upon the plaintiff to prove its contention that the taxes were not based on the valuation of the franchise.

[4] ID.—EXCESSIVE TAXES—REVIEW.—In the absence of evidence that assessments were fraudulently or mistakenly made, or that an improper method of valuation was pursued, consideration cannot be given to a claim that the taxes were excessive.

APPEALS from judgments of the Superior Court of the City and County of San Francisco.  George A. Sturtevant, Judge.  Affirmed.

The facts are stated in the opinion of the court.

B. M. Aikins for Appellant.

U. S. Webb, Attorney-General, and Frank L. Guerena, Deputy Attorney-General, for Respondent.

---

1.  Taxation of corporate franchise in the United States, note, 57 L. R. A. 33.

LENNON, J.—The Utah Construction Company, a corporation organized under the laws of the state of Utah and transacting business in Utah, California, and elsewhere, appeals from judgments rendered against it in two actions instituted by the said corporation against the treasurer of the state of California for the recovery of taxes paid to the state under protest in the fiscal years 1914–15 and 1915–16. The taxes were paid pursuant to assessments made by the state board of equalization and are respectively $4,000 and $2,268 in amount. With the exception of dates and figures, the pleadings, evidence, and findings in the two cases are practically the same, and by stipulation the evidence and judgment-roll in both cases are before this court in a single transcript.

Section 14 of article XIII of the state constitution, pertaining to taxation, is a new section, adopted in November, 1910. The pertinent portion of this section reads as follows: "(d) All franchises, other than those expressly provided for in this section, shall be assessed at their actual cash value, *in the manner to be provided by law,* and shall be taxed at the rate of one per centum each year, and the taxes collected thereon shall be exclusively for the benefit of the state." (Italics ours.) The italicized words afford the basis for the attack in the instant case, for appellant contends that legislative regulation of the manner of making an assessment is a prerequisite to a valid assessment when the constitution requires such legislation (*McHenry* v. *Downer,* 116 Cal. 20, [45 L. R. A. 737, 47 Pac. 779]), that the legislature failed to prescribe the manner in which franchises were to be assessed and, therefore, that the state board of equalization was without authority to assess appellant's franchise. Whether or not there has been a compliance with the constitutional requirement in this respect is the first question for consideration.

[1] In a statute expressly enacted for the purpose of carrying into effect the provisions of section 14, article XIII, of the state constitution, the legislature has, among other things, provided for the furnishing to the state board of equalization of information deemed important in ascertaining the value of franchises, that the board shall determine the value of the franchises from the information thus supplied and that the apportionment of taxes shall be based

upon the value obtained.   (Stats. 1911, pp. 530, 541.)   Consequently, in so far as the prescribing of the "manner" in which assessments are to be made imports the regulation of details of administration, the legislature has left little to be desired in its compliance with the constitutional mandate that such administrative machinery for making assessments be provided by law.   Therefore, appellant necessarily takes the position that the expression quoted from the constitution refers not only to the general procedure for assessing franchises, but that the term "manner" also signifies the rule to be followed by the board in determining the value of the franchises, or, in other words, that the constitution places upon the legislature the duty of specifying the weight to be accorded the various facts required to be reported and the mathematical process to be adopted by the board in arriving at a valuation of a franchise from the information before it.

In this connection it must be noted that this court held, in the case of *Miller & Lux v. Richardson,* 182 Cal. 115, 127, [187 Pac. 411], that, "when the constitution in article XIII, section 14, subdivision (d), provides for the assessment and taxation of corporate franchises, it means the so-called corporate excess, although such is not the usual, nor, strictly speaking, a proper, use of the word 'franchise.'"   "Corporate excess" is defined in the case cited as "the difference between the value of its [the corporation's] outstanding stocks and bonds as determined by market quotations, the earnings of the company, or otherwise, and the value of·its tangible or physical properties.   The theory is that the value of the company's outstanding stocks and bonds represents the value of its total assets, so that the difference between this total and the value of the company's physical properties represents the value of the company's intangible assets, and an assessment of the corporate excess, that is, of this difference, is an assessment of all the company's so-called intangibles."   (*Miller & Lux v. ·Richardson,* 182 Cal. 115, 117, [187 Pac. 411].)   It follows from this decision that, by the very use of the word "franchises," the constitution itself dictates, in a measure, the process to be pursued by the board of equalization in estimating the value of the property to be taxed. The constitution itself further provides that the franchises shall be taxed at their *actual cash* value.   The scope of appellant's attack is, therefore, confined to the single point

that the legislature has failed to select and prescribe a particular rule for appraising the total assets and the tangible property of the corporations, items which must be considered in ascertaining the "corporate excess."

The legislature has provided for the filing by the owner or holder of every taxable franchise of a written report containing detailed information concerning capital stock, bonds, debts, property, and other matters which the legislature evidently regarded as essential to a proper assessment of the value of franchises. (Stats. 1911, pp. 530, 541.) No attempt was made to direct the board of equalization as to how it should employ such information in arriving at the value of the total assets and tangible property of the corporations; the selection of the method calculated to lead to the most accurate valuation was left to the discretion of the said board. As a general rule, it is not essential that the legislature prescribe the method of valuation to be employed, but it may delegate to its taxing officers the power to adopt a suitable method and, in the latter case, the assessors must value the property according to their best judgment and with honest purpose. (*Western Union Tel. Co.* v. *Missouri*, 190 U. S. 412, 425, [47 L. Ed. 1116, 23 Sup. Ct. Rep. 730, 733, see, also, Rose's U. S. Notes] ; *Mexican Petroleum Corp.* v. *Bliss* (R. I.), 110 Atl. 867, 871; 1 Cooley on Taxation, 3d ed., p. 754.) The general requirement in the state constitution that the legislature fix the "manner" in which the assessment is to be made does not limit the power of the legislature to invest the taxing board with the right to choose a rule of valuation. This question was passed upon in *State* v. *Wells Fargo & Co.*, 38 Nev. 505, [150 Pac. 836], where the state constitution provided: "The legislature shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property, real, personal and possessory . . . " The court said: "It is further contended, however, that the legislature has failed to adopt any rule or regulation governing the manner of determining the value of the intangible property of the appellant corporation, and without such rule or regulation having been prescribed by the legislature, the revenue officers of the state are unauthorized to make an assessment. We think this objection sufficiently answered by the decision of this court

in *State* v. *Central Pac. R. R. Co.,* 10 Nev. 47, 63. This court, speaking through Beatty, J., said: 'No principle of valuation of property for purposes of taxation is prescribed by the laws of this state. The statutes define the different species of property, and provide that every species shall be assessed at its "actual cash value." But, as to the mode of ascertaining the cash value, our law is silent. No subsidiary principles of valuation are laid down to guide the owner in making his statement in those cases where he is required to specify values; and the assessor is left equally unrestricted in making his estimates. It follows that owners and assessors must be guided by those general principles which everywhere determine the valuation of property, independently of statutory rules.' " In *Commercial Electric L. & P. Co.* v. *Judson,* 21 Wash. 49, [57 L. R. A. 78, 56 Pac. 829], it was held that the taxing authorities had power to assess property in the absence of the adoption of any rule of valuation by the legislature, although the constitution required that property "shall be taxed in proportion to its value to be ascertained as provided by law." Bearing in mind that these holdings were under state constitutions which required that the legislature "shall prescribe such regulations as shall secure a just valuation" or that the "value" is "to be ascertained as provided by law," there can be no doubt that under the less specific provision of our own constitution to the effect that the assessment shall be made "in the manner to be provided by law," it was permissible for the legislature to commit to the board of equalization the duty of selecting the mode of ascertaining the cash value of the different elements dealt with in determining corporate excess instead of requiring the board to compute assessments according to a value-finding rule prescribed by the legislature.

Appellant next contends that the proceedings whereby the taxes in question were imposed were void for the reason that there was no assessment, that is, no actual valuation, of appellant's franchise. It is claimed that, instead of ascertaining the cash value of the franchise from the data before it, the board of equalization first estimated the amount of the tax which the members considered the corporation should pay and then some clerk figured out an assessment which would yield a tax equal to the desired amount. This contention is based upon the testimony of the secretary of the

board of equalization to the effect that the members of the board determine the amount of the tax and indorse this on the back of the corporation's franchise tax return and that afterward some clerk "will figure the assessment, whatever it may be, from the tax." The secretary further testified, however, that he was seldom present when the members of the board were assessing franchises and that he was not present when appellant's franchise was assessed in 1914. There was no evidence as to whether or not he was present at the 1915 assessment. Only one person who was present when the franchise was assessed was called as a witness. He was a member of the board and not a single question was asked of him as to what method the board had followed in fixing the 'amount of the tax or as to whether or not the franchise had been valued by the board and the amount of the tax determined in accordance with the value thus arrived at. He was questioned merely as to what evidence was before the board when the assessments were made, and he testified that the board had before it appellant's franchise tax returns. Nowhere in the record is there any evidence concerning the method followed by the board in arriving at the amount of the tax.

[2] It is a rule applicable to assessors and to boards having assessing powers that it is presumed that the assessing officers have properly performed the duties entrusted to them and, consequently, that their assessments are both regularly and correctly made. (Code Civ. Proc., sec. 1963, subd. 15; *Reclamation Dist.* v. *Wilcox*, 75 Cal. 443, [17 Pac. 241]; *In re Oklahoma G. & E. Co.* (Okl.), 171 Pac. 26.) The secretary was not present when the 1914 assessment was made and, in all probability, was absent when the franchise was assessed in 1915. Moreover, even conceding that he was qualified to testify as to what was done by the board, he did not testify as to the manner in which the board arrived at the "amount of tax," which was indorsed on the franchise tax returns, and it must, therefore, be presumed that the board determined this amount in the only legitimate way, that is, by first ascertaining the value of the franchise. Nor does this interpretation of the testimony fail to account for the fact that it was customary for a clerk to figure the assessment from the amount of the tax, for the board may have adopted this means of verifying or checking up its own

calculations in computing the amount of the tax upon the assessed value of the franchise. [3] At any rate, the state was not required to prove that the board did, in fact, base the tax upon the value of the franchise; the burden of showing the contrary rested upon appellant, and the only evidence adduced in this connection, namely, the testimony of the secretary of the board, was too indefinite and unsubstantial to overcome the presumption that the board had properly performed its official duties.

[4] Inasmuch as there is not a particle of evidence that the assessments were fraudulently or mistakenly made, or that an improper method of valuation was pursued, we cannot consider appellant's complaint that the taxes were excessive. (*Miller & Lux* v. *Richardson*, 182 Cal. 115, 128, [187 Pac. 411].)

The judgments are affirmed.

Wilbur, J., Sloane, J., Shurtleff, J., Richards, J., *pro tem.*, Waste, J., and Shaw, C. J., concurred.

Rehearing denied.

All the Justices concurred.