[Civ. No. 11582. Third Dist. Feb. 6, 1968.]

RED BLUFF DEVELOPERS, Plaintiff and Appellant, v. COUNTY OF TEHAMA, Defendant and Respondent.

Rawlins Coffman and Noel Watkins for Plaintiff and Appellant.

Robert W. Trimble, District Attorney, and Elmer R. Jennings, Deputy District Attorney, for Defendant and Respondent.

REGAN, J.—Plaintiff was the record owner of reserved oil, gas and other hydrocarbon rights which had been assessed by the assessor of Tehama County. It paid the taxes under protest and commenced this action to recover the sums so paid, and appeals from the judgment for defendant.

By stipulation of counsel, this cause was submitted to the trial court on the record, which includes the transcript of the proceedings before the Board of Supervisors of Tehama County sitting as a board of equalization, which denied plaintiff's application for reduction of this assessment.

Plaintiff, a California corporation, purchased 365 acres in Tehama County for development. This land was then subdivided into 59 lots averaging 5 to 6 acres each.

At the time plaintiff purchased this property, Humble Oil had an oil lease on the land for which it paid $1 an acre. This lease was cancelled shortly after plaintiff purchased the prop-

erty. Although the surrounding area had been explored for gas and oil, nothing was developed and drilling was abandoned.

When plaintiff sold the lots to private buyers, it reserved the oil and gas rights as to some of the lots. The policy of plaintiff corporation was to deed the mineral rights to buyers if they asked for them and to retain the rights if they did not request them. The same price was charged for a lot whether plaintiff reserved the rights or it did not.

In 1963 and 1964, the county assessed the mineral value of the lots in which plaintiff retained the mineral rights at $60 each, or a true value of $240. At the hearing before the board of supervisors sitting as a board of equalization, the secretary of the corporation, T. C. Manning, stated that the mineral rights had no value. The county assessor knew of no market value for the minerals. The assessor testified that the $3.35 tax actually represented his costs of billing, posting and assessing, i.e., his book work.

Plaintiff's application for reduction of the assessed valuation of its property was denied by the board of supervisors sitting as a board of equalization. The trial court, finding that there was no fraud or malicious abuse of power by the assessor, held for defendant county and ruled that the assessment must stand.

"Property" subject to taxation in this state is defined by the code as including "all matters and things, real, personal, and mixed, capable of private ownership." (Rev. & Tax. Code, § 103.) "Real property" includes "[a]ll mines, minerals, and quarries in the land . . . and all rights and privileges appertaining thereto." (Rev. & Tax. Code, § 104, subd. (b) ; see also Rev. & Tax. Code, § 607.5.) "Possessory interests," also subject to taxation, means, "possession of, claim to, or right to the possession of land . . . ." (Rev. & Tax Code, § 107.)

In California a possessory interest or a leasehold interest in mineral lands is subject to taxation, however such an interest is characterized. (*Delaney* v. *Lowery*, 25 Cal.2d 561 [154 P.2d 674] ; *Graciosa Oil Co.* v. *County of Santa Barbara*, 155 Cal. 140 [99 P. 483, 20 L.R.A. N.S. 211] ; *State of California* v. *Moore*, 12 Cal. 56 ; *County of Los Angeles* v. *Continental Corp.*, 113 Cal.App.2d 207, 226 [248 P.2d 157] ; see 23 So.Cal. L.Rev. 169, 170.)

Here the grantor reserved the mineral rights and thus expressly kept an estate in fee in itself.

■ "The owner of real property may divide his lands horizontally as well as vertically, and when he conveys the subsurface mineral deposits separately from the surface rights, or reserves them from a conveyance of such surface rights, he creates two separate fee simple estates in the land, each of which has the same status and rank. [Citations.]" (*Nevada Irr. Dist.* v. *Keystone Copper Corp.*, 224 Cal.App.2d 523, 527 [36 Cal.Rptr. 775].)

■ In *Merchants Trust Co.* v. *Hopkins*, 103 Cal.App. 473, 481-482 [284 P. 1072], the court, in comment on appellant's interest in coal and mineral rights, states: "[Appellant's interest] is certainly more than 'the possession of, claim to, or right to the possession of land.' In *Bakersfield etc. Co.* v. *Kern County, supra* [144 Cal. 148 (77 P. 892)], the Supreme Court held that even the possessory leasehold right to take oil from the land was properly assessable as real estate. *There can be no doubt on that point where the interest is in fee simple as here.* What logical distinction can exist between fee simple estates divided horizontally, to repeat the language of the Graciosa case, and those divided superficially and vertically? In either case the owner has an interest in perpetuity in a portion of the land. It follows that appellant's interest should have been assessed in accordance with [the applicable revenue and taxation code sections]." (Italics added.)

■ Plaintiff argues, however, that the mineral rights had no known value and hence it was impossible to assign an assessed value to them. In conjunction therewith he contends that the assessor fixed the assessed value at an arbitrary dollar amount by formula designed to result in the payment of a tax thereon equal to the cost of billing, posting and assessing.

■ ". . . The Revenue and Taxation Code requires that 'all taxable property shall be assessed at its full cash value' (§ 401), which means 'the amount at which property would be taken in payment of a just debt from a solvent debtor.' " (*Kaiser Co.* v. *Reid*, 30 Cal.2d 610, 622 [184 P.2d 879].)

■ However, the precise method to be used in calculating "full cash value" is not prescribed in the code. (*Kaiser Co.* v. *Reid, supra*, at p. 622.) As to this aspect, the court in *Utah Constr. Co.* v. *Richardson*, 187 Cal. 649, at pages 652-653 [203 P. 401], commented as follows: "As a general rule, it is not essential that the legislature prescribe the method of valuation to be employed, but it may delegate to its taxing officers the power to adopt a suitable method and, in the latter case, the

assessors must value the property according to their best judgment and with honest purpose. [Citations.] The general requirement in the state constitution that the legislature fix the 'manner' in which the assessment is to be made does not limit the power of the legislature to invest the taxing board with the right to choose a rule of valuation. . . . '. . . "No principle of valuation of property for purposes of taxation is prescribed by the laws of this state. The statutes define different species of property, and provide that every species shall be assessed at its 'actual cash value.' But, as to the mode of ascertaining the cash value, our law is silent. No subsidiary principles of valuation are laid down to guide the owner in making his statement in those cases where he is required to specify values; and the assessor is left equally unrestricted in making his estimates. It follows that owners and assessors must be guided by those general principles which everywhere determine the valuation of property, independently of statutory rules." ' "

It is the rule applicable to assessors and to boards having assessing powers that it is presumed that the assessing officers have properly performed the duties entrusted to them and, consequently, that the assessments are both regularly and correctly made. (*Utah Constr. Co.* v. *Richardson, supra,* 187 Cal. at p. 654.) As the court stated in *Los Angeles etc. Co.* v. *County of Los Angeles,* 162 Cal. 164 at pages 167-168 [121 P. 384, 9 A.L.R. 1277]:

"It is not disputed that the conclusion of assessing officers as to the value of property for purposes of taxation, when honestly arrived at and when not made in pursuance of some fixed rule or general system the result of which is necessarily discriminatory and inequitable, is conclusive on the courts, however erroneous the conclusion of those officers may be. The law necessarily leaves the determination of the question of fact of value to certain officers, and when it appoints tribunals for that purpose, as in this state primarily the assessor, and, for purpose of review, the board of supervisors acting as a county board of equalization, the conclusion of those tribunals on such a question of fact constitutes a judgment that is not collaterally assailable in the courts. This is the universal rule, and it has been so held in this state. [Citations.]"

Thus, before taxes can be set aside where they are claimed to be excessive, there must be evidence to show that the assessments were fraudulently or mistakenly made, or that an im-

proper method of valuation was pursued. (*Utah Constr. Co.* v. *Richardson, supra,* 187 Cal. at p. 655; *Miller & Lux* v. *Richardson,* 182 Cal. 115, 128 [187 P. 411].) Put another way, specific valuations and methods of valuation employed are reviewable only for arbitrariness, abuse of discretion, or failure to follow the standards prescribed by the Legislature. (*De Luz Homes, Inc.* v. *County of San Diego,* 45 Cal.2d 546, 564 [290 P.2d 544].) This court's review is limited to the valuation figure found by the board and its method of valuation. (*County of Amador* v. *State Board of Equalization,* 240 Cal.App.2d 205, 216 [49 Cal.Rptr. 448].)

■ "While for the purpose of taxation the 'full cash value' of property is commonly construed to mean its 'fair market value'—the value a willing purchaser will pay to a willing seller in an open market—[citations], the absence of an 'actual market' for a particular type of property does not mean that it has no value or that it may escape from the constitutional mandate that 'all property . . . shall be taxed in proportion to its value' (art. XIII, § 1) but only that the assessor must then use such pertinent factors as replacement costs and income analyses for determining 'valuation.' [Citations.]" (*Kaiser Co.* v. *Reid, supra,* 30 Cal.2d 610, 623; see also *De Luz Homes, Inc.* v. *County of San Diego, supra,* 45 Cal.2d 546, 563-564.)

The court further observed in *De Luz,* at pages 563-564: "Assessors generally estimate value by analyzing market data on sales of similar property, replacement costs, and income from the property [citations], and since no one of these methods above can be used to estimate the value of all property, the assessor, subject to requirements of fairness and uniformity, may exercise his discretion in using one or more of them."

At the hearing before the board, plaintiff's secretary testified that the mineral rights had no value. Nor did the assessor know of any market value for the minerals. No other evidence was given on value.

As to the method of valuation used in this case, the record shows the following:

"MR. CHAIRMAN: The $3.55 is actually your cost of billing, posting and assessing for your book work, is that true?

"MR. BURGESS [Assessor] My assessments put on the reserve property rights. I have a minimum value on those lots he has not yet sold. He has fee title. There's no reservation of minerals. They're assessed for the fee title for the land where he

reserved the mineral rights. He reserved the property rights, and according to law, I must assess it.

"MR. COFFMAN: May I ask that the chairman's question be read to the witness, and the witness asked to answer it?

" (Whereupon the record was read as follows:

"Q. The $3.55 is actually your cost of billing, posting and assessing for your book work, is that true?)

"MR. BURGESS: Yes, it is true.

" . . . . . . . . . . .

"Q. BY MR. COFFMAN: Mr. Burgess, you have no basis, as far as market is concerned, in setting that up, that $240?

"A. BY THE WITNESS: That's a mineral value.

"Q. This is fixed by whom? A. By the assessor.

"Q. By you? A. Yes.

"Q. And predicated not upon market value but upon book-keeping and market costs? A. Yes.

"Q. And you know of no market value for those minerals, do you? A. No."[1]

 The assessor is compelled to assess all property pursuant to the constitutional mandate that all property shall be taxed in proportion to its value (art. XIII, § 1). It is clear that the Tehama County assessor failed in this regard. His method in no sense was related to the full cash value of the subsurface fee estate reserved by and presently owned by plaintiff.

 Accordingly, we hold that the estate in fee reserved by plaintiff was a proper subject of assessment which the county assessor is required to assess. However, the *method* of assessment used was improper in that the assessor failed to follow the prescribed standards.

We note at this point that when a proper assessment has been made, and should the amount of tax be minimal, the person charged by law with the collection thereof may, pursuant to the provisions of sections 2611.1 and 2611.4 of the Revenue and Taxation Code, seek a discharge from accountability for the collection of the tax assessment.

 Plaintiff lastly urges that the assessor by fixing a value and assessing the oil, gas and other hydrocarbons reserved by plaintiff without reducing or offsetting these values

---

[1] It is not known what the assessor meant by stating, in effect, that the assessment was predicated upon ''bookkeeping *and* market costs,'' for no other mention is made of ''market costs.'' Thus, although the record is not entirely clear, it would appear that the assessment was made purely on the basis of the assessor's bookkeeping costs. (Italics added.)

against the entire fee estate, which is assessed to another who is the owner of the surface estate, is engaging in a discriminatory practice resulting in double taxation in violation of section 102 of the Revenue and Taxation Code, which reads: ''Nothing in this division shall be construed to permit double taxation.''

This contention is raised for the first time on appeal and will therefore not be considered by the court. (*Peebler* v. *Danziger*, 104 Cal.App.2d 491, 493 [231 P.2d 895].) We comment, however, that where, as in the case before us, two separate fee simple estates in the land have been created, each having the same status and rank, the county assessor is obligated to assess each separately to the owner of record. The county assessor may not lawfully assess both estates to an individual owning only one.

The judgment is reversed. Respondent county is directed to refund the taxes paid under protest with interest, if any, as provided by law and in accordance with the views expressed herein.

Pierce, P. J., and Friedman, J., concurred.