[Civ. No. 26094. First Dist., Div. Two. Oct. 23, 1970.]

CAMPBELL CHAIN COMPANY OF CALIFORNIA et al.,
Plaintiffs and Appellants, v.
COUNTY OF ALAMEDA et al., Defendants and Respondents.

[Civ. No. 26418. First Dist., Div. Two. Oct. 23, 1970.]

CAMPBELL REALTY OF CALIFORNIA et al.,
Plaintiffs and Appellants, v.
COUNTY OF ALAMEDA et al., Defendants and Respondents.

(Consolidated Cases.)

Stark, Simon & Sparrowe, Stark, Stewart, Simon & Sparrowe, John F. Wells, John F. Banker and Merrill J. Schwartz for Plaintiffs and Appellants.

Richard J. Moore, County Counsel, and Joseph P. Bingaman, Deputy County Counsel, for Defendants and Respondents.

OPINION

TAYLOR, J.—In this consolidated matter, several corporate taxpayers sought to recover property taxes paid to respondents under protest (Rev. & Tax. Code, § 5138) for the 1966 tax year. The appeals are from two judgments of the superior court after a consolidated trial[1] to review the

---

[1]Consolidated for trial with the two matters involved in this appeal was *Glidden Co.* v. *County of Alameda*, 5 Cal.App.3d 371 [85 Cal.Rptr. 88], determined by Division One of this court on March 13, 1970; petition for hearing denied by the Supreme Court May 6, 1970, wherein most of the issues were substantially different.

action of the Alameda County Board of Supervisors, acting as a board of equalization (hereafter Board). Appellants contend that substantial evidence supports their assertion that the Alameda County Assessor (hereafter Assessor) applied different assessment ratios to different classes of property, in violation of the constitutional prohibition against unfair and discriminatory assessments, and that the Board erroneously excluded certain proffered evidence.

The basic facts are not in dispute. On the applicable tax date, March 1, 1966, the respective appellants were the owners of certain business personal property and commercial real property.[2] Appellants stipulated that the appraisals of market value of their property made by the Assessor were correct as the fair market value of the different classes of property they owned, and that the 40 percent assessment ratio[3] was applied to the "full cash value" of each class of property. The gist of their complaint for a reduction before the Board was that the *full cash value figure* to which the 40 percent ratio was applied was a different percent of fair market value for each class of property. The Assessor indicated that the figure denominated as "full cash value" was 100 percent of fair market value *for business personal property,* 70 percent of fair market value *for commercial and industrial real property,* and 54 percent of fair market value *for residential real property.* The Board determined that the use of different ratios for different classes of property to arrive at assessed values was proper, refused to admit into evidence at the equalization hearing the 1966 average assessment ratio for the county as determined by the State Board of Equalization, as well as the depositions of the Assessor and his deputy in charge of business inventories and equipment, and also rejected appellants' applications for a partial refund of the 1966 property taxes.

The trial court reviewed the record of the equalization hearing before the Board and accepted as an item of newly discovered evidence a form letter mailed by the Assessor. The court found that in applying an assessment ratio of 40 percent to the full cash value of appellants' business personal property and commercial real property, the Assessor acted without discrimination in respect to the several kinds of property involved, and without discrimination in respect to appellants and other taxpayers similarly situated, that the exclusion of the above mentioned evidence was not erroneous, and entered judgments in favor of respondents.

---

[2] The taxpayers in No. 26094 owned only business personal property (cash, inventories and business equipment); the taxpayers in No. 26418 owned both business personal property and commercial real property.

[3] The assessment ratio is the ratio of assessed value to fair market value (*County of Sacramento* v. *Hickman,* 66 Cal.2d 841 [59 Cal.Rptr. 609, 428 P.2d 593]).

The parties concede that the questions presented must be resolved on the record made before the Board. The duty of determining the value of property and the fairness of the assessment is confined to the appropriate county board of equalization. The taxpayer has no right to a trial de novo in the superior court to resolve conflicting issues of fact as to the taxable value of his property (*Bank of America* v. *Mundo,* 37 Cal.2d 1 [229 P.2d 345]; *County of San Diego* v. *Stiles,* 268 Cal.App.2d 261, 263 [73 Cal. Rptr. 868]; *County of L.A.* v. *Tax Appeals Bd. No. 2,* 267 Cal.App.2d 830 [73 Cal.Rptr. 469]; *Griffith* v. *County of Los Angeles,* 267 Cal.App.2d 837 [73 Cal.Rptr. 773]).

The applicable general principles are found in the state Constitution and the Revenue and Taxation Code. "All property in the State [not exempt] . . . shall be taxed in proportion to its value, to be ascertained as provided by law, or as hereinafter provided." (Cal. Const., art. XIII, § 1; and see Rev. & Tax. Code, § 201.) Prior to 1967,[4] section 401 provided, "Except as provided in this part, all taxable property shall be assessed at its full cash value." "Value," "full cash value," or "cash value" means the amount at which property would be taken in payment of a just debt from a solvent debtor. The term "full cash value" is deemed synonymous with "market value" (*De Luz Homes, Inc.* v. *County of San Diego,* 45 Cal.2d 546, 561-562 [290 P.2d 544]). Nevertheless, the practice of assessment at a uniform fraction of full cash value, provided the latter remained the standard or basis of each assessment, is of long standing and has received judicial approval when subjected to attack on constitutional grounds (*County of Sacramento* v. *Hickman, supra,* pp. 846-851; *A. F. Gilmore Co.* v. *County of Los Angeles,* 186 Cal.App.2d 471, 475-476 [9 Cal.Rptr. 67]).

The value of property for assessment purposes is to be determined by the county board of equalization on such basis as is used in regard to other property so as to make all assessments as equal and fair as is practicable (Cal. Const., art. XIII, § 9; Rev. & Tax. Code, §§ 1601-1615; and see §§ 1620-1629; *Flying Tiger Line, Inc.* v. *County of Los Angeles,* 51 Cal.2d 314, 320 [333 P.2d 323]; *Universal Cons. Oil Co.* v. *Byram,* 25 Cal.2d 353, 356 [153 P.2d 746]; *Schwarz* v. *County of Marin,* 271 Cal.

---

[4]By Statutes of 1966, First Extra Session, chapter 147, section 34, page 658, section 401 was amended to read, "Every assessor shall assess all property subject to general property taxation from the lien date for the 1967-68 fiscal year through the 1970-71 fiscal year at a publicly announced ratio of his own choosing which shall be between 20 percent and 25 percent of full cash value. Beginning with the lien date for the 1971-72 fiscal year, he shall assess all property subject to general property taxation at 25 percent of its full cash value." Subsequent amendments added and revised the second paragraph as found in Statutes of 1968, First Extra Session, chapter 1, section 10, page 10. Amendments to section 1605 have put a ceiling on the ratio at which assessments may be "equalized."

App.2d 120, 122 [76 Cal.Rptr. 207]; *Griffith* v. *County of Los Angeles,* 267 Cal.App.2d 837, 841 [73 Cal.Rptr. 773]). In order to carry out this principle, the assessor and the county board of equalization must apply the same ratio to market value uniformly within the county (*County of Sacramento* v. *Hickman, supra;* and *Knoff* v. *City etc. of San Francisco,* 1 Cal.App.3d 184, 196 [81 Cal.Rptr. 683]). This is tested by a comparison of the ratio of the assessed valuations to the market valuations of the subject properties with the ratio of the assessed valuations to the market valuations of all of the taxable property in the county (*Schwarz* v. *County of Marin, supra,* pp. 122-123).

 Appellants first contend that their business personal property and commercial real property were assessed at a higher ratio than was property generally in the county. The uncontroverted evidence indicates and the trial court found that in 1966, in arriving at the assessed value, the Assessor established a value for real property which he called the fair market value. He then applied a discount to arrive at the full cash value: 30 percent for commercial real property, and 46 percent for residential real property. As to the business personal property, the Assessor did not start with market value, but the cost to the taxpayer and then applied a discount of 30 percent to arrive at the full cash value. After applying the discounts, the Assessor applied the assessment ratio of 40 percent to all three classes of property to arrive at the assessed value. Appellants contend that the application of the discounts was unlawful and discriminatory and that the 40 percent assessment ratio should have been applied to the fair market value of all three classes of property.

The reasons for the use of differential discounts, somewhat similar to those in the instant case, were explained by the court in *Rittersbacher* v. *Board of Supervisors,* 220 Cal. 535 [32 P.2d 135], at pages 543-544: "It is the assessor's recognized duty to see that the valuation placed on the various kinds of property shall be in proportion to the worth of such properties. If it is proportional and all are treated alike, no one contends that the taxpayers must be charged a full hundred per cent, for such is not required by the law. It is also recognized that the assessment on personal property shall be on a basis which is fair to the owners of real property so that neither shall suffer to the advantage of the other.

"In dealing with the assessment of personal property the assessor is confronted with a difficult problem. In an endeavor to solve it he recognizes two general classes, viz.: 'Business personal property' and 'personal property.' The former refers to that class of personal property owned and used in manufacture, commerce and trade and the latter to that class of personal property which represents the personal belongings of individuals, usually

in their homes. With reference to a stock in trade it is obviously impracticable if not impossible to take an inventory and evaluate each article. The inventories of stocks of merchandise reflected on the books of the company are taken as indicative of their worth. This inventory is discounted twenty per cent and then fifty per cent is applied for assessment purposes. It is not pointed out by the plaintiffs, nor does it appear how or in what manner the discount so applied is as a matter of law unreasonable or unlawful. Conceding that twenty per cent is an arbitrary figure, some discount would appear to be necessary and proper. Depreciation in value of merchandise which has remained upon the shelves must take place, as surely as depreciation of structures. Formerly the same percentage of depreciation was applied to machinery and equipment. But in recent years the replacement cost, which is deemed an important factor, has been found to decline steadily, the percentage of depreciation has been increased accordingly, and the fifty per cent of the value less this depreciation has been applied for assessment purposes. A dealer's inventory of new automobiles has been discounted twenty per cent and the remainder assessed on a basis of fifty per cent. Used automobiles, both in the hands of dealers and in use, are depreciated forty per cent on a basis of the cost price and the year of manufacture. This is likewise more or less arbitrary, but it must necessarily be so in order to attain a proper degree of uniformity."

Thus, the method here used was sanctioned in *Rittersbacher, supra.* In *Lockheed Aircraft Corp.* v. *County of Los Angeles,* 207 Cal.App.2d 119 [24 Cal.Rptr. 316], the court noted at page 128: "It is a truism that cost is not necessarily value, even though it is sometimes a useful indicator of value. (See *Mahoney* v. *City of San Diego,* 198 Cal. 388, 401 [245 P. 189].)" The court also stated at pages 129-130: "The business of determining value, whether based upon cost or upon other factors, is the special function of the assessor. A representation by the taxpayer's accountants that the dollars shown for the inventory accounts are 'recoverable' is something for the assessor to consider in determining what is the value of the tangible property which is referred to in the inventory accounts. In the performance of his official duty, he determines what costs, if any, and what other factors, if any, shall be relied upon as establishing the value of particular property. This is the essence of the appraisal function which the law commits to the assessor and to the board of equalization." ■ Although the standard of valuation prescribed by statute is "full cash value" rather than cost, in proper circumstances, cost may serve as a point of departure from which the assessor may proceed to determine "full cash value" (*Michael Todd Co.* v. *County of Los Angeles,* 57 Cal.2d 684 [21 Cal.Rptr. 604, 371 P.2d 340]).

Nor can we agree that the method employed here was comparable to

that rejected by Division Three of this court in *Jones Lbr. Co.* v. *Del Norte County,* 251 Cal.App.2d 645 [59 Cal.Rptr. 644]. In *Jones,* after fixing full comparability, the assessor applied a scale of discounts based solely on the number of board feet of lumber owned by a single taxpayer without regard to whether the total holdings were in a single parcel or in separate noncontiguous parcels. No similarly discriminatory method was shown here.

*Mahoney* v. *City of San Diego,* 198 Cal. 388 [245 P. 189], wherein the assessor arbitrarily excluded from his valuations of improvements on real estate, age, state of repair and cost of construction or replacement, likewise does not help appellants, but supports the method here used. Furthermore, the uncontroverted evidence here indicated that the Assessor followed the handbook on appraisal of equipment and inventory published by the state board of equalization, which provides that the book value of an inventory is accepted if it: 1) is physically complete; 2) reflects the property trade level; 3) reflects present-day pricing; and 4) is adjusted for realistic obsolescence. If the book value does not meet these conditions, then the appraiser must estimate the adjustments necessary to make a "full cash value" estimate of the inventory (*Rittersbacher, supra,* pp. 544-545; *Eastern-Columbia, Inc.* v. *County of Los Angeles,* 70 Cal.App.2d 497, 505-508 [161 P.2d 407]).

Appellants next contend that the trial court erred in excluding the state board ratio and depositions of the Assessor and his deputy. The record indicates that the exclusion of the state board ratio was on the ground that the figure available at that time was preliminary in nature and not final. The exclusion on this basis is supported by *Web Service Co.* v. *County of Los Angeles,* 242 Cal.App.2d 1 [51 Cal.Rptr. 753], and *Leach Corp.* v. *County of Los Angeles,* 228 Cal.App.2d 634 [39 Cal.Rptr. 654]. *Leach* construed Revenue and Taxation Code section 1819[5] as a legislative declaration that the state board ratio and its tabulations are not to be available to individual taxpayers until the date fixed for publication or release. We are bound by that decision.

Appellants seek to distinguish *Web* and *Leach* on the grounds that in those cases the taxpayers were attempting to use other than final ratio determinations of the state board of equalization and did not, as here, produce evidence of the accuracy of the calculations of the state board.

---

[5]The statute provided, so far as pertinent, that the state board give the assessor of each county a reasonable opportunity to examine and discuss with it the proposed ratio for the county. The state board "after making any adjustment it deems appropriate, but not later than August 23rd" shall publish the ratio and make the tabulations available for public inspection.

They further argue that in the instant case the Assessor had, in fact, received the preliminary state ratio long before the July hearing before the Board was concluded, that it was accurate, and that he was not planning to seek an adjustment pursuant to Revenue and Taxation Code section 1819. ▆ However, as noted in *Griffith* v. *County of Los Angeles, supra,* the proof of a difference between the state-determined ratios and that utilized by the county would not in itself prove a discriminatory assessment practice against the taxpayer (*Glidden Co.* v. *County of Alameda, supra,* pp. 380-381).

▆ As to the exclusion of the depositions, the record indicates that these were taken after the granting of appellants' motion *to perpetuate testimony* (Code Civ. Proc., § 2017). It was held in *Hunt-Wesson Foods, Inc.* v. *County of Stanislaus,* 273 Cal.App.2d 92 [77 Cal.Rptr. 832], that the depositions of a county assessor and his deputies could not be taken *since their introduction was not permissible at an anticipated equalization hearing.* (Rev. & Tax. Code, § 1609.)[6] The court concluded that Code of Civil Procedure section 2017 was designed for the perpetuation of testimony, even though discovery may be a by-product, and that *if there is no opportunity to use perpetuated testimony in an actual legal action,* the function and purpose of the statutory device is thwarted and the use of the section for obtaining collateral information only should be denied.

▆ Furthermore, at the time of the equalization hearing before the Board in the instant matter, the statutes required the applicant for a reduction in assessment to be present and present evidence touching the value of his property,[7] as well as the presence of the Assessor and any deputy whose attendance is necessary.[8] The record here indicates that all were present. Thus, appellants had ample opportunity to take testimony from the Assessor and his deputy, but chose not to do so after the depositions were rejected. We conclude that the trial court properly found that the exclusion of this evidence was not prejudicial, in any event, as the matter was available to the Board in a different form.

---

[6]By Statutes of 1967, chapter 1473, section 2, Revenue and Taxation Code section 1609 was amended (effective August 25, 1967) to exclude the use of depositions for any purpose by the county board or assessment appeals board.

[7]Revenue and Taxation Code section 1608 then provided: "Before the county board.makes any reduction, it shall examine, on oath, the person affected or the agent making the application touching the value of the property. A reduction shall not be made unless the person or agent attends and answers all questions pertinent to the inquiry . . ."

[8]Revenue and Taxation Code section 1610 then provided: "During the session of the county board, the assessor and any deputy whose testimony is needed shall be present and may make any statement or produce evidence on matters before the county board."

As indicated earlier, the only question presented to the superior court in the instant case was whether there was evidence of sufficient substantiality before the Board to justify its findings. In the absence of fraud or malice or ambiguous use of its powers, the Board is the sole judge of questions of fact and the values of property (*Bank of America* v. *Mundo, supra; De Luz Homes, Inc.* v. *County of San Diego, supra*). The taxpayer has the burden of showing the Board that the Assessor's figures are improper and the assessments are not fair and equitable (*Griffith* v. *County of Los Angeles, supra,* p. 842). Under the rule applicable to assessors and to boards having assessing powers, it is presumed the assessing officers have properly performed the duties entrusted to them and that consequently their assessments are both regular and correctly made (*Utah Constr. Co.* v. *Richardson,* 187 Cal. 649, 654 [203 P. 401]; Evid. Code, § 664; *Griffith* v. *County of Los Angeles, supra*). For appellants to prevail, it would be necessary for them to submit evidence that there was a disparity in ratio between that applied to their property and that applied to other property generally throughout the county. To sustain his burden, the taxpayer must at least make a prima facie showing, that is, he must introduce some evidence of the assessment inequality before there is any burden on the Assessor. Without this prima facie showing, the Assessor is not obligated to go forward with any evidence, but may stand on the presumption that the assessment is fair and equitable (*Glidden Co.* v. *County of Alameda, supra; Griffith* v. *County of Los Angeles, supra,* p. 842). Appellants have failed to meet their burden of proof.

The judgments in favor of respondents are affirmed.

Shoemaker, P. J., and Agee, J., concurred.

A petition for a rehearing was denied November 20, 1970, and appellants' petition for a hearing by the Supreme Court was denied January 21, 1971. Peters, J., was of the opinion that the petition should be granted.