[Civ. No. 1789. Fifth Dist. May 16, 1974.]

WESTLAKE FARMS, INC. et al., Plaintiffs and Appellants, v.
COUNTY OF KINGS, Defendant and Respondent.

**COUNSEL**

Thomas, Snell, Jamison, Russell, Williamson & Asperger and Fenton Williamson, Jr. for Plaintiffs and Appellants.

Allen C. Wait, County Counsel, for Defendant and Respondent.

**OPINION**

**GARGANO, J.**—In August 1969, appellants petitioned the Kings County Board of Supervisors for a reduction of the assessments made by the county assessor for the tax year 1969-1970 on 40 separate parcels of land located in the Tulare Lake Basin of Kings County;[1] one parcel was owned by Westlake Grain and Cotton, Inc., four parcels belonged to the Priest Valley Cattle Company, and 35 parcels were owned by Westlake Farms,

[1] See Appendix, Table 1 (*post*, p. 190).

Inc.[2] Thereafter, the petitions were consolidated for hearing before the board of supervisors sitting as a county board of equalization.

The consolidated hearing on appellants' petitions was held in October 1969; after the hearing the petitions were denied. Appellants then brought this action in the court below for judicial review. They now seek appellate review of the judgment entered in favor of the county.

■ We consider first appellants' contention that the superior court erred in applying the substantial evidence test. The cause was submitted to the court for decision on the transcript of the testimony taken at the hearing before the county board of equalization, and appellants complain because the court declined to reweigh the evidence.

Appellants concede, as they must, that the appellate courts of this state consistently have held that in reviewing the decision of a board of equalization, the function of the superior court is to examine the administrative record to determine whether the board's findings are supported by substantial evidence and whether the board has committed any errors of law. (*City of Los Angeles* v. *County of Mono,* 51 Cal.2d 843, 851 [337 P.2d 465]; *Bank of America* v. *Mundo,* 37 Cal.2d 1, 5 [229 P.2d 345]; *County of Sacramento* v. *Assessment Appeals Bd. No. 2,* 32 Cal.App.3d 654, 661 [108 Cal.Rptr. 434]; *Campbell Chain Co.* v. *County of Alameda,* 12 Cal.App.3d 248, 253, 258 [90 Cal.Rptr. 501].) They contend that as to hearings conducted by county boards of equalization, the decisional law has been changed by the 1968 amendment to section 1605.5 of the Revenue and Taxation Code. The section, as amended, states that "[a]t the hearing the final determinations by the board shall be supported by the weight of the evidence," and appellants argue that because the county boards of equalization already were required to weigh the evidence, the amendment is meaningless unless it directs the superior courts to *reweigh* the evidence presented at equalization hearings. (Ehrman, *Property Tax Appeals* (1970) 22 Hastings L.J. 1, 20-21.)

Section 9 of article XIII of the Constitution provides that "[t]he board of supervisors of the several counties of the State shall constitute boards of equalization for their respective counties, whose duty it shall be to equalize the valuation of the taxable property in the county for the purpose of taxation . . . ." The section then empowers the boards to increase or lower any assessment made by the county assessor ". . . so as to equalize

---

[2]The parcel owned by Westlake Grain and Cotton, Inc. and the Westlake Farms, Inc. properties were operated as one unit and will be referred to as the "Home Ranch."

the assessment of the property contained in [the] assessment roll, and make the assessment conform to the true value in money of the property contained in [the] roll . . . ." A county board of supervisors "is the fact-finding body designated by [the Constitution] to remedy excessive assessments" (*Universal Cons. Oil Co.* v. *Byram,* 25 Cal.2d 353, 362 [153 P.2d 746]), and to hold that the 1968 amendment to section 1605.5 is a direction to the superior courts to reweigh the evidence presented at equalization hearings would shift the equalization responsibility from the board to the superior court in contradiction of the Constitution. Such a holding also would create an equal protection problem as to assessments equalized by the State Board of Equalization because section 1605.5 has no application to the state agency. It is basic that a statute must be construed in a constitutional manner whenever possible. (*San Francisco Unified School Dist.* v. *Johnson,* 3 Cal.3d 937, 942 [92 Cal.Rptr. 309, 479 P.2d 669]; *Estate of Skinker,* 47 Cal.2d 290, 297 [303 P.2d 745, 62 A.L.R.2d 1137].)

Furthermore, the procedure to be followed by a taxpayer who seeks judicial review of an excessive assessment is found in chapter 5 of part 9 of division 1 of the Revenue and Taxation Code, and this chapter is silent as to the nature or scope of the judicial review required. On the other hand, section 1605.5 is incorporated in chapter 1 of part 3 of division 1 of the Revenue and Taxation Code, and chapter 1 only pertains to the boards of equalization; in fact, the 1968 amendment is a codification of subdivision (a) of section 324 of title 18 of the California Administrative Code which contains essentially the same language. If the Legislature had intended to change the decisional law, it would have made the change in clear language and in the appropriate chapter.

We note that in *Strumsky* v. *San Diego County Employees Retirement Assn.,* 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29], the California Supreme Court extended the rule of independent judicial review articulated in *Bixby* v. *Pierno,* 4 Cal.3d 130, 141-144 [93 Cal.Rptr. 234, 481 P.2d 242], to the decisions of local agencies and state agencies of local jurisdiction. The high court, after declaring that the 1950 amendment to section 1 of article VI of the California Constitution had the effect of leaving the entire judicial power concentrated in the state judicial system and some *constitutional agencies,* stated at page 44: ". . . if the order or decision of the [local] agency substantially affects a fundamental vested right, the court, in determining under section 1094.5 of the Code of Civil Procedure whether there has been an abuse of discretion because the findings are not supported by the evidence, must exercise its independent

judgment on the evidence and find an abuse of discretion if the findings are not supported by the weight of the evidence."

The *Bixby* v. *Pierno* rule of review has no application to equalization hearings conducted by county boards of supervisors even if we were to assume that such hearings affect the vested rights of the complaining taxpayers. The power of the board of supervisors to equalize assessments contained in the county assessment roll and to reduce an assessment if the board determines that the assessment is excessive stems from the California Constitution. (Cal. Const., art. XIII, § 9.) Consequently, while sitting as a board of equalization, the county board of supervisors is a constitutional agency exercising quasi-judicial powers delegated to the agency by the Constitution. (*City of Los Angeles* v. *County of Mono, supra,* 51 Cal.2d 843, 851; *Universal Cons. Oil Co.* v. *Byram, supra,* 25 Cal.2d 353, 362; *County of L. A.* v. *Tax Appeals Bd. No. 2,* 267 Cal. App.2d 830, 834 [73 Cal.Rptr. 469]; *Eastern-Columbia, Inc.* v. *County of L. A.,* 61 Cal.App.2d 734, 745 [143 P.2d 992].) On this point, the *Strumsky* court said at pages 35-36: "The roots of the indicated distinction insofar as it relates to so-called 'constitutional agencies' can be traced to their ultimate source in one of our most fundamental constitutional doctrines, that of separation of powers. That doctrine, which has been a part of the Constitution of this state since its inception, is presently expressed in article III, section 3 as follows: 'The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others *except as permitted by this Constitution.*' (Italics added.) [Fn. omitted.] It is the italicized proviso which forms the basis for the exercise of judicial powers by so-called 'constitutional agencies'; insofar as specific constitutional provisions relating to the individual agencies in question directly vest judicial power in them, the agencies so favored can perform judicial functions to the extent of the grant without offending the doctrine of separation of powers. (See *Covert* v. *State Board of Equalization, supra,* 29 Cal.2d 125, 132 [173 P.2d 545]; see also Cal. Administrative Mandamus, *supra,* §§ 1.3, 5.67 pp. 5, 76.) Thus even though a vested fundamental right be involved, the determination of the agency on factual issues is entitled to all the deference and respect due a judicial decision. [Fn. omitted.]"

We turn to the merits of the appeal:

■ In arriving at their conflicting values of the properties involved in this litigation, both appraisers employed the "comparative sales" method of appraisal. Mr. Van Workum, the assessor's appraiser, used six compara-

tive sales; however, the owners' appraiser used seventeen,[3] and appellants maintain that the county official acted arbitrarily and capriciously in selecting the comparable sales that he used. Appellants cite two examples. First, Mr. Van Workum ignored three sales which took place during the years from 1959 through 1961, where the lands involved sold at $200 an acre; appellants maintain that the sales were relevant because the majority of the acreage purchased was part of the "Home Ranch" at the time that the assessments were made. Second, the assessor's appraiser did not consider the sale of a one-half partnership interest in the "Home Ranch" from one partner to another; there was testimony that the sale of the partnership interest was an arms length transaction, and appellants assert that it was particularly relevant because it involved not only a part of the lands assessed but it was the only sale representing a large one-unit operation.

While appellants' evidence may show that Mr. Van Workum was not as diligent as he should have been in seeking information on comparable sales in the Tulare Lake Basin area, and that he may have made errors in judgment, the evidence does not prove, as a matter of law, that the appraiser was arbitrary and capricious. Van Workum explained that he knew of the three sales which were made during the years 1959 through 1961 and that he did not use them because they were too old. He admitted that he had not heard of the sale of the partnership interest and said that the information was not made available to him until only a few weeks prior to the hearing before the board of supervisors; the county official also questioned the propriety of using the sale because in his opinion it was a closed market sale of a fractional interest between operating partners. Van Workum testified, in essence, that he did not use some of the other sales used by appellants' appraiser either because he did not know of the sale or because he did not believe that the lands sold were comparable to the lands assessed; he said that in making his appraisals he considered all sales available and the six sales he used "were the ones that [he] felt were most comparable" in relation to soil condition, water supply and location.

■ It must be presumed that assessing officers have performed their duties properly and that "their assessments are both regularly and correctly made." (*Utah Construction Co.* v. *Richardson,* 187 Cal. 649, 654 [203 P. 401]; *Campbell Chain Co.* v. *County of Alameda, supra,* 12 Cal.App.3d 248, 258; Evid. Code, § 664.) As the court said in *Red Bluff Developers* v. *County of Tehama,* 258 Cal.App.2d 668, 673-674 [66 Cal.Rptr. 229]: ". . . before taxes can be set aside where they are claimed to be excessive, there must be evidence to show that the assessments were fraudulently or

---

[3]See Appendix, Tables 2 and 3 (*post,* p. 191).

mistakenly made, or that an improper method of valuation was pursued. [Citations.] Put another way, specific valuations and methods of valuation employed are reviewable only for arbitrariness, abuse of discretion, or failure to follow the standards prescribed by the Legislature. (*De Luz Homes Inc.* v. *County of San Diego,* 45 Cal.2d 546, 564 [290 P.2d 544].)"

■ In any event, appellants do not deny that after a taxpayer has had a hearing before the board of equalization, the manner in which the county assessor arrived at the assessed value of the taxpayer's property is superseded by the decision of the board unless it appears from the record that the board perpetuated, adhered to, adopted or confirmed the same valuation method used by the assessor. (*Mahoney* v. *City of San Diego,* 198 Cal. 388, 403-404 [245 P. 189]; *Los Angeles etc. Co.* v. *County of L. A.,* 162 Cal. 164, 168-169 [121 P. 384, 9 A.L.R. 1277]; *County of Tuolumne* v. *State Board of Equalization,* 206 Cal.App.2d 352, 372 [24 Cal.Rptr. 113]; *Hammond L. Co.* v. *County of Los Angeles,* 104 Cal.App. 235, 241 [285 P. 896].) Nor can they deny that ". . . the board's decision in regard to specific valuations and the methods of valuation employed are equivalent to the findings and judgment of a trial court and reviewable only for arbitrariness, abuse of discretion, or failure to follow the standards prescribed by the Legislature." (*De Luz Homes, Inc.* v. *County of San Diego,* 45 Cal. 2d 546, 564 [290 P.2d 544].) ■ Appellants argue that the comments which were made by the members of the board of supervisors immediately before they voted to deny appellants' petitions demonstrate that the board did not weigh the evidence; appellants insist that the board merely adopted and confirmed the same erroneous valution methods used by the county assessor.

It is true that some of the remarks made by the board members before the vote was taken suggest that they upheld the assessor's valuations solely because the county assessor is the official entrusted with the responsibility of assessing taxable properties within the county and because they may have believed that a reduction in the assessments in question would invite claims from other taxpayers. The members of the Kings County Board of Supervisors are lay persons, not trained lawyers, and it is arguable that what they meant to say is that they believed the assessor's valuations were correct when considered in light of all of the evidence. The assessor's per acre valuations of the subject properties generally were substantially less than the per acre sales prices of the comparable properties he used and well within the range of the per acre sales prices of the comparable properties used by the owners' appraiser. At the conclusion of the hearing the chairman of the board said he wanted the matter taken under submission be-

cause he had six or seven pages of notes to discuss with his fellow board members. The board members mentioned the fact that there were numerous variables to be considered, that the sale of the partnership interest in the "Home Ranch" was a closed market transaction, and that some of the comparative sales used by appellants' appraiser suggested that the quality of the lands involved in those sales was inferior to the quality of the lands assessed. In the absence of written findings to guide us, we are reluctant to resort to the obscure statements of the board members to impeach their decision or to hold that the board acted arbitrarily, abused its discretion or failed to follow the standards prescribed by the Legislature. ■ As the court said in *County of Amador* v. *State Board of Equalization,* 240 Cal. App.2d 205, 216 [49 Cal.Rptr. 448]: "Findings on material issues delineate the basis for an administrative agency's decision. Inadequate findings impede the parties' recourse to the courts and thwart the latter in the performance of their review obligations. 'The more general the findings, the more difficult it is for the reviewing court to ascertain the principles relied upon by the reviewing agency.' [Citation.] Aside from their aid to the litigants, findings are needed to aid the courts in determining whether there is sufficient evidence to support them and to enable the courts to determine whether the decision is based on lawful principles. [Citation.] Insufficiency of the findings to permit fair review may entail a remand to the administrative agency. [Citation.]"

■ Appellants attempt to excuse the lack of written findings by pointing to the stipulation of the parties to the effect that appellants requested the board of supervisors to make findings pursuant to section 1605.5 of the Revenue and Taxation Code and that no such findings were made by the board. This section, in pertinent part, provides: "Written findings of fact of the county board shall be made if requested in writing by a party up to or at the commencement of the hearing."

The provisions of section 1605.5 are not jurisdictional; the section goes on to state that ". . . the party requesting findings may abandon the request and waive findings at the conclusion of the hearing." The record shows that albeit appellants may have requested written findings from the board, they made no attempt to pursue their request before commencing this action in the superior court. The record shows further that the board's failure to make the written findings was not raised or urged in the court below. Appellants' request for findings was abandoned by implication, and they cannot be heard to complain for the first time on appeal.

■ Appellants' remaining contention is that the board's decision is not supported by substantial evidence.

Mr. Van Workum is a qualified appraiser with many years of experience in appraising farm properties in the Tulare Lake Basin; it is conceded that he used an approved method of valuation; his testimony indicates that the comparable sales he used complied with the criteria now prescribed by section 402.5 of the Revenue and Taxation Code; Van Workum testified that while he used only six sales, he considered all sales available. We agree with the trial court's observation that there is a conflict in the evidence which must be resolved in favor of the county under the substantial evidence test.

The judgment is affirmed.

Brown (G. A.), P. J., and Franson, J., concurred.

APPENDIX

The following table shows the parcels assessed by the assessor, the number of acres in each parcel, the assessor's value per acre, and the owners' appraised value per acre:

TABLE No. 1

| Parcels Assessed by the Assessor | No. of Acres in Each Parcel | Assessor's Value Per Acre | Owners' Appraised Value Per Acre |
|---|---|---|---|
| 52 | 102 | $425 | $318 |
| 53 | 299 | 421 | 316 |
| 54 | 633 | 534 | 400 |
| 55 | 320 | 573 | 430 |
| 56 | 264 | 625 | 468 |
| 57 | 610 | 618 | 463 |
| 58 | 633 | 493 | 370 |
| 59 | 589 | 540 | 405 |
| 60 | 602 | 617 | 463 |
| 61 | 575 | 617 | 463 |
| 62 | 279 | 550 | 412 |
| 63 | 316 | 450 | 338 |
| 64 | 609 | 445 | 334 |
| 65 | 21 | 450 | 338 |
| 66 | 45 | 450 | 338 |
| 67 | 311 | 542 | 407 |
| 68 | 320 | 487 | 365 |
| 69 | 199 | 450 | 338 |
| 70 | 303 | 600 | 489 |
| 71 | 20 | 600 | 450 |
| 72 | 320 | 700 | 525 |
| 73 | 320 | 691 | 519 |
| 74 | 320 | 395 | 276 |
| 75 | 160 | 439 | 329 |
| 76 | 434 | 437 | 328 |
| 77 | 640 | 493 | 370 |
| 78 | 240 | 443 | 332 |
| 79 | 80 | 450 | 338 |
| 80 | 619 | 490 | 367 |
| 81 | 240 | 437 | 329 |
| 82 | 400 | 443 | 332 |
| 83 | 320 | 583 | 437 |
| 84 | 274 | 600 | 450 |
| 85 | 249 | 600 | 450 |
| 86 | 314 | 583 | 437 |
| 87 | 40 | 330 | 248 |
| 88 | 275 | 400 | 300 |
| 89 | 320 | 390 | 293 |
| 90 | 160 | 400 | 300 |
| 91 | 320 | 381 | 286 |

APPENDIX

The following tables set forth the sales considered by each expert witness, the size of the parcels sold, the year of the sale, and the per acre sales price:

TABLE 2—SALES CONSIDERED BY THE ASSESSOR

| Parcel No. | Size of Parcel Sold | Year of Sale | Per Acre Sales Price |
|---|---|---|---|
| 1 | 1089 Acres | 1967 | $700 |
| 2 | 160 ” | 1965 | 830 |
| 3 | 160 ” | 1963 | 780 |
| 4 | 315 ” | 1963 | 793 |
| 5 | 319 ” | 1963 | 800 |
| 6 | 468 ” | 1966 | 603 |

TABLE 3—SALES CONSIDERED BY THE OWNERS' APPRAISER

| Parcel No. | Size of Parcel Sold | Year of Sale | Per Acre Sales Price |
|---|---|---|---|
| 1A | 101 Acres | 1966 | $222 |
| 1B | 232 ” | 1966 | 105 |
| 2 | 480 ” | 1968 | 570 |
| 3 | 468 ” | 1966 | 820 |
| 4 | 160 ” | 1967 | 800 |
| 5 | 930 ” | 1967 | 825 |
| 6 | 1,146 ” | 1968 | 500 |
| 7 | 160 ” | 1966 | 219 |
| 8 | 40 ” | 1967 | 150 |
| 9 | 560 ” | 1967 | 100 |
| 10 | 160 ” | 1967 | 125 |
| 11 | 160 ” | 1969 | 300 |
| 12 | 80 ” | 1967 | 200 |
| 13 | 160 ” | 1965 | 875 |
| A | 960 ” | 1961 | 200 |
| B | 320 ” | 1961 | 200 |
| C | 1,542 ” | 1959 | 200 |